Anne L. Weismann
D.C. Bar No. 298190
Melanie Sloan
D.C. Bar No. 434584
Citizens for Responsibility
and Ethics in Washington
1400 Eye Street, N.W.
Suite 450
Washington, D.C.  20005
202-408-5565

Scott A. Hodes
D.C. Bar No. 430375
P.O. Box 42002
Washington, D.C.  20015
301-404-0502

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
CITIZENS FOR RESPONSIBILITY AND                  :
ETHICS IN WASHINGTON                             :
1400 Eye Street, N.W., Suite 450                 :
Washington, D.C. 20005                           :
                                                 :
                 Plaintiff,                      :
                                                 :
         v.                                      :   Civil Action No._____
                                                 :
U.S. DEPARTMENT OF EDUCATION                     :
400 Maryland Ave., S.W.                          :
Washington, D.C.  20202                          :
                                                 :
                 Defendant.                      :
_____:

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND INJUNCTIVE RELIEF

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as

amended, as well as agency FOIA regulations, challenging the failure of the United States

Department of Education ("Education"), to fulfill the request of Citizens for Responsibility and

Ethics in Washington ("CREW") for documents relating to Ignite! Learning, an Austin, Texas,

producer of computerized educational products.

2.  This case seeks declaratory relief that defendant is in violation of the FOIA for failing

to fulfill plaintiff's request for records, in violation of the FOIA and agency regulations for

failing to grant plaintiff's request for a waiver of fees and injunctive relief that defendant

immediately and fully comply with plaintiff's request under the FOIA.

## JURISDICTION AND VENUE

3.  This Court has both subject matter jurisdiction over this action and personal

jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).  This Court also has jurisdiction

over this action pursuant to 28 U.S.C. § 1331.  Venue lies in this district under 5 U.S.C.

§ 552(a)(4)(B).

4.  Plaintiff CREW is a non-profit corporation, organized under section 501(c)(3) of the

Internal Revenue code.  CREW is committed to protecting the right of citizens to be informed

about the activities of government officials and to ensuring the integrity of government officials.

CREW seeks to empower citizens to have an influential voice in government decisions and in the

governmental decision-making process through the dissemination of information about public

officials and their actions.  To advance its mission, CREW uses a combination of research,

litigation, and advocacy.  As part of its research, CREW uses government records made available

to it under the FOIA.

5.  CREW has invested considerable organizational resources in pushing the U.S.

government to take ethics issues seriously.  CREW monitors closely the laws and rules

applicable to government agencies.

6.    CREW is harmed by Education's failure to comply with the FOIA because that failure harms CREW's ability to provide full, accurate and current information to the public on a matter of public interest.  5 U.S.C. § 552(a)(6)(c).  Absent this critical information, CREW cannot advance its mission of educating the public to ensure that the public continues to have a vital voice in government decisions.

7.    CREW will analyze the information it receives that is responsive to its request and will share it with the public through memoranda, reports, or press releases.  In addition, CREW will disseminate any documents it acquires from its request to the public through the CREW Document Review System, an interactive website where members of the public can analyze and comment on public documents.  See http://foia.citizensforethics.org/home.  Currently, CREW's website contains links to thousands of pages of documents acquired from multiple FOIA requests.  See, e.g., http://www.citizensforethics.org/node/25784.  Visitors to CREW's website can peruse the FOIA request letters, responses from government agencies and a growing number of documents responsive to FOIA requests.  The CREW website also includes documents relating to CREW's FOIA litigation, Internal Revenue Service complaints and Federal Election Commission complaints.

8.    Defendant Education is an agency within the meaning of 5 U.S.C. § 552(f).  Defendant is the federal agency with possession and control of the requested records and is responsible for fulfilling CREW's FOIA request.

## STATUTORY FRAMEWORK

### The Freedom of Information Act

9.  The FOIA, 5 U.S.C. § 552, requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

10.  An agency must respond to a party making a FOIA request within 20 working days, notifying that party of at least the agency's determination whether or not to fulfill the request and of the requester's right to appeal the agency's determination to the agency head.  5 U.S.C. § 552(a)(6)(A)(i).

11.  An agency must respond to a FOIA appeal within 20 working days, notifying the appealing party of the agency's determination to either release the withheld records or uphold the denial.  5 U.S.C. § 552(a)(6)(A)(ii).

12.  In "unusual circumstances," an agency may delay its response to a FOIA request or appeal, but must provide notice and must also provide "the date on which a determination is expected to be dispatched."  5 U.S.C. § 552(a)(6)(B).

13.  The FOIA also requires each agency to promulgate regulations specifying a fee schedule for the processing of FOIA requests and establishing procedures and guidelines for the waiver or reduction of fees.  5 U.S.C. § 552(a)(4)(A).  Defendant Education's fee waiver regulations are found at 34 C.F.R. § 5.64.  Under the FOIA, agencies should produce documents at no charge to the requester or at a reduced charge if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

14. This Court has jurisdiction, upon receipt of a complaint, "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

15. The FOIA provides a mechanism for disciplinary action against agency officials who have acted inappropriately in withholding records. Specifically, when requiring the release of improperly withheld records, if the court makes a written finding that "the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously," a disciplinary investigation is triggered. 5 U.S.C. § 552(a)(4)(F).

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF

16. On May 16, 2007, CREW sent a FOIA request to Education seeking documents relating to contacts with specified individuals, products or entities associated with Ignite! Learning. Letter from Daniel C. Roth, Counsel, CREW, to Office of Management, Regulatory Information Management Services, U.S. Department of Education (May 16, 2007) (attached as Exhibit 1). Specifically, CREW requested records from three enumerated Education offices as well as any office with staff members whose duties include implementing the No Child Left Behind Act of 2001 ("NCLB"), 20 U.S.C. § 6301 et seq., of or relating to any contacts with: (1) Ignite! Learning, a/k/a Ignite!, or any officer or employee thereof; (2) Curriculum on Wheels, a/k/a/ COWs; (3) Neil Bush; (4) Barbara Bush; (5) Ken Leonard; (6) Lori Anderson; (7) Ashleigh Snyder; and (8) Sid (sic) Rogich. Id. at 1. CREW also requested a waiver of fees associated with the processing of its request. Id. at 2-3.

17. By letter dated June 20, 2007, Education responded to CREW's FOIA request, stating that it could not process the request as drafted because it did not "describe the records sought with

a reasonable amount of detail such that a Department employee would be able to locate

potentially responsive documents with a reasonable amount of effort."  Letter from Maria-Teresa

Cueva, FOIA Public Liaison, OM/RIMS, U.S. Department of Education, to Daniel C. Roth,

Counsel, CREW (June 20, 2007) at 1 (attached as Exhibit 2).  Education also denied CREW's

request for a fee waiver.  Id. at 2-3.

    18.  By letter dated July 3, 2007, CREW responded to Education's contention that the

May 16 request did not reasonably describe the records sought.  Letter from Daniel C. Roth,

Counsel, CREW, to Maria-Teresa Cueva, U.S. Department of Education (July 3, 2007) (attached

as Exhibit 3).  CREW noted that Education did not address any particular deficiencies in CREW's

request, but simply stated the statutory standard required by the FOIA.  Id. at 1-2.  CREW also

pointed out that the May 16 request was far more narrowly tailored than previous FOIA requests

to Education that the agency had rejected as overly broad.  Id. at 2.  Finally, CREW relayed the

fact that the Department of Commerce began processing a nearly identical request within days of

receipt.  Id. at 2-3.

    19.  On July 9, 2007, CREW appealed Education's denial of a fee waiver.  Letter from

Daniel C. Roth, Counsel, CREW, to Chief Information Officer, U.S. Department of Education

(July 9, 2007) (attached as Exhibit 4).  CREW argued that Education had erroneously required

CREW to go beyond the statutory and regulatory standards of a public interest fee waiver.

Specifically, Education faulted CREW for failing to "identify a *specific program* under which the

state might pay for educational products through funds made available pursuant to the No Child

Left Behind Act of 2001."  (emphasis added) (Exhibit 2 at 3).  As both FOIA and Education

regulations make clear, however, the standard for a public interest fee waiver is that the records

sought will contribute significantly to the public's understanding of "the operations or activities of the government."  5 U.S.C. § 552(a)(4)(A)(iii); 34 C.F.R. § 5.64 (a)(1).

20.  While not conceding the applicability of the "specific program" standard, CREW explained that NCLB Title I program funds were being used to purchase Ignite! Learning products.  Exhibit 4 at 2.  CREW also provided supplemental information addressing why CREW was entitled to a public interest fee waiver.  Id. at 2-3.

21.  By letter dated August 23, 2007, Education again claimed that it was unable to process CREW's request without additional clarifications, citing five reasons.  Letter from Maria-Teresa Cueva, FOIA Public Liaison, U.S. Department of Education, to Daniel C. Roth, Counsel, CREW (Aug. 23, 2007) (attached as Exhibit 5).   The letter provided no appeal rights.  Id.

22.  On September 14, 2007, CREW responded to Education's letter.  Letter from Daniel C. Roth, CREW, to Maria-Teresa Cueva, U.S. Dep't of Education (Sept. 14, 2007) (attached as Exhibit 6).  CREW refuted each of Education's reasons for again denying CREW's request, on both factual and legal grounds.  Id.

23.  By letter dated September 21, 2007, Education denied CREW's request for a fee waiver.  Letter from Michell Clark, Office of Management, U.S. Department of Education, to Daniel C. Roth, Counsel, CREW (Sept. 21, 2007) (attached as Exhibit 7).  In sum, Education found that CREW's fee waiver request and subsequent appeal "lack the specificity needed to satisfy [CREW's] burden under the public interest prong of the fee waiver analysis."  Id. at 5.  Education acknowledged that CREW has exhausted its administrative remedies and could appeal the decision in this court.  See id.

24.  As of the filing of this complaint, Education has not produced any documents to CREW in response to CREW's May 16, 2007 request, or CREW's subsequent September 14 letter.

25.  CREW has now exhausted its administrative remedies with respect to the processing of CREW's FOIA request.  See, e.g., Judicial Watch v. Rossoti, 326 F.3d 1309, 1310 (D.C. Cir. 2003) citing 5 U.S.C. § 552(a)(6)(C).

### PLAINTIFF'S CLAIMS FOR RELIEF

### CLAIM ONE
### (Failure to Produce Records Under the FOIA)

26.  Plaintiff realleges and incorporates by reference all preceding paragraphs.

27.  Plaintiff properly asked for records within Education's control.

28.  Plaintiff is entitled by law to access to the records requested under the FOIA, unless defendant makes an explicit and justified statutory exemption claim.

29.  Education has produced no records to CREW.

30.  Therefore, Education violated FOIA's mandate to release agency records to the public by failing to release the records as plaintiff specifically requested.  5 U.S.C. §§ 552(a)(3)(A), 552(a)(4)(B).

### CLAIM TWO
### (Improper Denial of Fee Waiver)

31.  Plaintiff realleges and incorporates by reference all preceding paragraphs.

32.  Plaintiff has demonstrated that it is entitled to a waiver of fees associated with processing its FOIA request, because disclosure of responsive records will likely contribute

significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the plaintiff.

33. Therefore, defendant violated FOIA's and defendant's own regulations when it denied CREW's administrative appeal and upheld defendant's initial determination that CREW is not entitled to a waiver of fees. 5 U.S.C. § 552(a)(4)(A)(iii); 34 C.F.R. § 5.64

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court:

(1) Declare that the U.S. Department of Education has violated the Freedom of Information Act by failing to lawfully satisfy plaintiff's FOIA request of May 16, 2007;

(2) Order Education to release immediately all records responsive to plaintiff's FOIA request;

(3) Declare that Education violated the Freedom of Information Act and agency regulations when it determined that Plaintiff is not entitled to a waiver of all fees associated with the processing of its FOIA request and declare that Plaintiff is entitled to a fee waiver;

(3) Award plaintiff its reasonable attorney fees and litigation costs in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(4) Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Anne L. Weismann
(D.C. Bar No. 298190)
Melanie Sloan
(D.C. Bar No. 434584)
Citizens for Responsibility and

9

Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Phone: (202) 408-5565
Fax: (202) 588-5020

Scott A. Hodes
(D.C. Bar No. 430375)
P.O. Box 42002
Washington, D.C.  20015
Phone (301) 404-0502
Fax (413) 641-2833


Attorneys for Plaintiff

Dated: September 25, 2007

# CIVIL COVER SHEET

JS-44
(Rev. 2/01 DC)

| **I (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE:  In land condemnation cases, use the location of the tract of land involved. |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |

## II BASIS OF JURISDICTION
(SELECT ONE BOX ONLY)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in item III)

## III  CITIZENSHIP OF PRINCIPAL PARTIES
( FOR DIVERSITY CASES ONLY!)

(SELECT ONE FOR PLAINTIFF AND ONE FOR DEFENDANT)

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Select **one** category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### A.  Antitrust

- 410  Antitrust

### B. Personal Injury/ Malpractice

- 310  Airplane
- 315  Airplane Product Liability
- 320  Assault, Libel & Slander
- 330  Federal Employers Liability
- 340  Marine
- 345  Marine Product Liability
- 350  Motor Vehicle
- 355  Motor Vehicle Product Liability
- 360  Other Personal Injury
- 362  Medical Malpractice
- 365  Product Liability
- 368  Asbestos Product Liability

### C.  Administrative Agency Review

- 151  Medicare Act

**Social Security:**
- 861  HIA ((1395ff)
- 862  Black Lung (923)
- 863  DIWC/DIWW (405(g)
- 864  SSID Title XVI
- 865  RSI (405(g)

**Other Statutes**
- 891  Agricultural Acts
- 892  Economic Stabilization Act
- 893  Environmental Matters
- 894  Energy Allocation Act
- 890  Other Statutory Actions (If Administrative Agency is Involved)

### D.  Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## E.  General Civil (Other)     OR     F.  Pro Se General Civil

**Real Property**
- 210  Land Condemnation
- 220  Foreclosure
- 230  Rent, Lease & Ejectment
- 240  Torts to Land
- 245  Tort Product Liability
- 290  All Other Real Property

**Personal Property**
- 370  Other Fraud
- 371  Truth in Lending
- 380  Other Personal Property Damage
- 385  Property Damage Product Liability

**Bankruptcy**
- 422  Appeal 28 USC 158
- 423  Withdrawal 28 USC 157

**Prisoner Petitions**
- 535  Death Penalty
- 540  Mandamus & Other
- 550  Civil Rights
- 555  Prison Condition

**Property Rights**
- 820  Copyrights
- 830  Patent
- 840  Trademark

**Forfeiture/Penalty**
- 610  Agriculture
- 620  Other Food &Drug
- 625  Drug Related Seizure of Property 21 USC 881
- 630  Liquor Laws
- 640  RR & Truck
- 650  Airline Regs
- 660  Occupational Safety/Health
- 690  Other

**Federal Tax Suits**
- 870  Taxes (US plaintiff or defendant)
- 871  IRS-Third Party 26 USC 7609

**Other Statutes**
- 400  State Reapportionment
- 430  Banks & Banking
- 450  Commerce/ICC Rates/etc.
- 460  Deportation
- 470  Racketeer Influenced & Corrupt Organizations
- 810  Selective Service
- 850  Securities/Commodities/Exchange
- 875  Customer Challenge 12 USC  3410
- 900  Appeal of fee determination under equal access to Justice
- 950  Constitutionality of State Statutes
- 890  Other Statutory Actions  (if not administrative agency review or  Privacy Act)

| G. Habeas Corpus/2255 | H. Employment Discrimination | I. FOIA/PRIVACY ACT | J. Student Loan |
|---|---|---|---|
| 530 Habeas Corpus-General<br>510 Motion/Vacate Sentence | 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | 895 Freedom of Information Act<br>890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | 152 Recovery of Defaulted Student Loans (excluding veterans) |

| K. Labor/ERISA (non-employment) | L. Other Civil Rights (non-employment) | M. Contract | N. Three-Judge Court |
|---|---|---|---|
| 710 Fair Labor Standards Act<br>720 Labor/Mgmt. Relations<br>730 Labor/Mgmt. Reporting & Disclosure Act<br>740 Labor Railway Act<br>790 Other Labor Litigation<br>791 Empl. Ret. Inc. Security Act | 441 Voting (if not Voting Rights Act)<br>443 Housing/Accommodations<br>444 Welfare<br>440 Other Civil Rights | 110 Insurance<br>120 Marine<br>130 Miller Act<br>140 Negotiable Instrument<br>150 Recovery of Overpayment & Enforcement of Judgment<br>153 Recovery of Overpayment of Veteran's Benefits<br>160 Stockholder's Suits<br>190 Other Contracts<br>195 Contract Product Liability | 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

| 1 Original Proceeding | 2 Removed from State Court | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 Transferred from another district (specify) | 6 Multi district Litigation | 7 Appeal to District Judge from Mag. Judge |
|---|---|---|---|---|---|---|

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

| VII. REQUESTED IN COMPLAINT | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ | Select YES only if demanded in complaint<br>JURY DEMAND:     YES     NO |
|---|---|---|---|

**VIII. RELATED CASE(S)** (See instruction)
**IF ANY**                    YES        NO        If yes, please complete related case form.

DATE                SIGNATURE OF ATTORNEY OF RECORD _____

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**EXHIBIT 1**

**CREW** | **citizens for responsibility and ethics in washington**

May 16, 2007

Office of Management
Regulatory Information Management Services
U.S. Department of Education
400 Maryland Avenue, SW, PCP 9143
Washington, DC 20202-4700

**By Fax, (202) 245-6623, and First Class mail**

**Re: Freedom of Information Act Request**

Dear Sir/Madam:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, pursuant to the Freedom of Information Act ("FOIA") and Department of Education ("Department") regulations, 34 C.F.R. §§ 5.6 et. seq.

Specifically, CREW seeks any records dating from January 20, 2001, through the present, from the following Department of Education offices:

(1) Office of the Secretary, including the offices of the Chief of Staff and Senior Counselor,
(2) Office of the Deputy Secretary,
(3) Office of Elementary and Secondary Education
(4) any other office in which there are staff members whose duties include implementation of the No Child Left Behind Act of 2001,

of or relating to any contact with the following individuals or entities:

(1) Ignite! Learning a/k/a Ignite!, or any officer or employee thereof,
(2) Curriculum on Wheels a/k/a COWs,
(3) Neil Bush,
(4) Barbara Bush,
(5) Ken Leonard,
(6) Lori Anderson,
(7) Ashleigh Snyder and
(8) Sid Rogich.

Please search responsive records regardless of format, medium or physical characteristics. Where possible, please produce records electronically in PDF or TIF format on a CD-ROM. We seek records of any kind, including electronic records, audiotapes, videotapes and photographs. Our request includes any telephone messages, voice mail messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions and transcripts or notes of any such meetings and/or discussions.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide an index of those documents as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972). As you are aware, a Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the Vaughn index must "describe each document or portion thereof withheld, and for **each** withholding it must discuss the consequences of supplying the sought-after information." King v. U.S. Dep't of Justice, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" Id. at 224 (citing Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. See 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. Mead Data Central, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a Vaughn index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

## Fee Waiver Request

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 34 C.F.R. § 5.64, CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government programs and procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-

commercial purposes. 5 U.S.C. § 552(a)(4)(A)(iii).  See, e.g., McClellan Ecological v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987).

Specifically, these records are likely to contribute to the public's understanding of an educational product that apparently is being or has been utilized by a quarter million public school students in 19 states, the District of Columbia and Puerto Rico.  Press Release, Ignite! Learning, Ignite! Learning Surpasses Milestone Reaching More Than 250,000 Students (Jan. 22, 2007) (attached as Exhibit A).  As of October 2006, at least thirteen school districts were reportedly paying for Ignite! products with money received by the states under the No Child Left Behind Act of 2001.  See Walter F. Roche, Jr., Bush's Family Profits from 'No Child' Act, LA Times, Oct. 22, 2006 (attached as Exhibit B).

CREW is a non-profit corporation organized under section 501(c)(3) of the Internal Revenue Code.  CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials.  CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process.  CREW uses a combination of research, litigation, and advocacy to advance its mission.  The release of information garnered through this request is not in CREW's financial interest.  CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memoranda, reports or press releases. See, e.g. Hurricane Katrina International Relief; State Department documents reveal difficult coordination with other federal agencies, Citizens for Responsibility and Ethics in Washington (July 5, 2006), available at http://www.citizensforethics.org/files//DOSDocumentSummary.pdf. In addition, CREW will disseminate any documents it acquires from this request to the public. CREW has established an interactive website where members of the public can analyze and comment on public documents, including documents CREW acquires through the FOIA.  See http://foia.citizensforethics.org/home.  Currently, this site contains links to thousands of pages of documents CREW acquired from multiple FOIA requests.  CREW's main website, www.citizensforethics.org, also includes documents relating to CREW's FOIA litigation, Internal Revenue complaints and Federal Election Commission complaints.  As CREW's websites demonstrate, CREW has an established history of acquiring documents through the FOIA and publishing them on its website for public use.

Under these circumstances, CREW fully satisfies the criteria for a fee waiver.


**Conclusion**

Please respond to this request in writing within 20 days as required under 5 U.S.C. § 552(a)(6)(A)(I).  If all of the requested documents are not available within that time period, CREW requests that you provide all requested documents or portions of documents which are available within that time period.

If you have any questions about this request or foresee any problems in releasing fully the requested records within the twenty-day period, please contact me at (202) 408-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination. Please send the requested documents to Daniel C. Roth, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C. 20005.

Sincerely,

Daniel C. Roth
Counsel
Citizens for Responsibility and Ethics in Washington

Enclosures

4

# EXHIBIT A



*For Immediate Release*

Contact:
Scott Campbell
Phillips and Company
(512) 423-4907
dscampbell@phillipscompany.com

### Ignite! Learning Surpasses Milestone Reaching More Than 250,000 Students

*Innovative curriculum solution serves more than 10,000 science and social studies classrooms*

AUSTIN, Texas – January 22, 2007 – Ignite! Learning, an educational curriculum publishing company, today announced that the Curriculum On Wheels (COW) now reaches more than 250,000 students in more than 10,000 science and social studies classrooms across the United States, making the COW one of the nation's fastest growing curriculum solutions being adopted by teachers today.

The Curriculum On Wheels is aligned to state standards and provides a comprehensive curriculum for middle school and upper elementary instruction. Teachers use the COW to enhance classroom education with pre-developed science and social studies lessons that augment students' learning and retention.

The Science or Social Studies COW comes preloaded with a complete academic year of daily use curriculum covering all middle school grades, including lesson plans, classroom and student activities, unit tests as well as media to engage students resulting in active learning. Each lesson leverages two to three media pieces that comprise animation, video, images, text and music to reinforce key material while fostering critical thinking through the lesson plans and activities.

The COW is a turnkey solution; teachers simply plug it in and it works. In addition to curricula, the portable unit contains a built-in computer, projector and speakers that help teachers instruct more effectively without the trouble associated with cumbersome technology-related products.

Ignite! Learning has placed 2,000 COWs in 19 states, the District of Columbia and Puerto Rico. Each COW serves an average of 125 students per semester. Ignite! expects to triple its sales for each of the next three to five years, dramatically increasing the number of teachers and students who will benefit from the easy-to-use, results-oriented curricula.

Ignite! Learning President Ken Leonard said, "We spend most of our time listening – listening to teachers and school districts to better understand what they need to help them succeed in their efforts to enhance classroom

instruction. We have designed the COW around the way teachers want to teach and that has made all the difference."

Moreover, pass rates for standardized testing in some school districts using the COWs have increased 20 to 40 percent. For example, after the Science COW was used for one semester at Burnet Elementary in the Midland (Texas) Independent School District, the test scores for Burnet's economically disadvantaged population increased from a 67 percent passing rate in 2005 to 87 percent in 2006. According to Burnet Principal Kellie Ebenstein, those increases are 29 percent higher than similar students in the region based on the Accountability Data Tables from The Texas Education Agency.

"Reaching the 250,000 student milestone is significant for us; however, what inspires us most is how regular use of the COW translates into academic improvement gains in classrooms in 19 states. The COW motivates teachers and students to learn, and the improved test scores that result provide school communities with measurable evidence of our positive impact" said Leonard. "We know we're making a real difference in teachers and students' lives each and every day."

**About Ignite Learning**

Ignite! is committed to helping teachers by creating classroom solutions that are comprehensive, motivational, and easy to use. The company's curriculum is rooted in current research on best practices for middle and upper elementary schools. School districts and public and private schools in more than 19 states as well as the District of Columbia and Puerto Rico have adopted the Ignite! Curriculum On Wheels to help improve student performance in science and social studies. Ignite! plans to release a comprehensive mathematics curriculum in 2007. For more information on Ignite! Learning, visit www.ignitelearning.com.

Ignite! ™, Curriculum on Wheels™, COW™ and the Ignite! Learning logo are trademarks of Ignite! Inc. All other trademarks herein are properties of their respective owners. All rights reserved.

**EXHIBIT B**

## THE NATION
*BUSH'S FAMILY PROFITS FROM `NO CHILD' ACT*
*[HOME EDITION]*

Los Angeles Times - Los Angeles, Calif.
Author:          Walter F. Roche Jr.
Date:           Oct 22, 2006
Section:         Main News; Part A; National Desk
Document Types:   News
Text Word Count:   1887

**Document Text**

*(Copyright (c) 2006 Los Angeles Times)*

A company headed by President Bush's brother and partly owned by his parents is benefiting from Republican connections and federal dollars targeted for economically disadvantaged students under the No Child Left Behind Act.

With investments from his parents, George H.W. and Barbara Bush, and other backers, Neil Bush's company, Ignitel Learning, has placed its products in 40 U.S. school districts and now plans to market internationally.

At least 13 U.S. school districts have used federal funds available through the president's signature education reform, the No Child Left Behind Act of 2001, to buy Ignite's portable learning centers at $3,800 apiece.

The law provides federal funds to help school districts better serve disadvantaged students and improve their performance, especially in reading and math.

But Ignite does not offer reading instruction, and its math program will not be available until next year.

The federal Department of Education does not monitor individual school district expenditures under the No Child program, but sets guidelines that the states are expected to enforce, spokesman Chad Colby said.

Ignite executive Tom Deliganis said that "some districts seem to feel OK" about using No Child money for the Ignite purchases, "and others do not."

Neil Bush said in an e-mail to The Times that Ignite's program had demonstrated success in improving the test scores of economically disadvantaged children. He also said political influence had not played a role in Ignite's rapid growth.

"As our business matures in the USA we have plans to expand overseas and to work with many distinguished individuals in Asia, Europe, the Middle East and Africa," he wrote. "Not one of these associates by the way has ever asked for any access to either of my political brothers, not one White House tour, not one autographed photo, and not one Lincoln bedroom overnight stay."

Funding laws unclear

Interviews and a review of school district documents obtained under the Freedom of Information Act found that educators and legal experts were sharply divided over whether Ignite's products were worth their cost or qualified under the No Child law.

The federal law requires schools to show they are meeting educational standards, or risk losing critical funding. If students fail to meet annual performance goals in reading and math tests, schools must supplement their educational offerings with tutoring and other special programs.

Leigh Manasevit, a Washington attorney who specializes in federal education funding, said that districts using the No Child funds to buy products like Ignite's would have to meet "very strict" student eligibility requirements and ensure that the Ignite services were supplemental to existing programs.

Known as COW, for Curriculum on Wheels (the portable learning centers resemble cows on wheels), Ignite's product line is geared toward middle school social studies, history and science. The company says it has developed a social studies program that meets curriculum requirements in seven states. Its science program meets requirements in six states.

Most of Ignite's business has been obtained through sole-source contracts without competitive bidding. Neil Bush has been directly involved in marketing the product.

In addition to federal or state funds, foundations and corporations have helped buy Ignite products. The Washington Times Foundation, backed by the Rev. Sun Myung Moon, head of the South Korea-based Unification Church, has peppered classrooms throughout Virginia with Ignite's COWs under a $1-million grant.

Oil companies and Middle East interests with long political ties to the Bush family have made similar bequests. Aramco Services Co., an arm of the Saudi-owned oil company, has donated COWs to schools, as have Apache Corp., BP and Shell Oil Co.

Neil Bush said he is a businessman who does not attempt to exert political influence, and he called The Times' inquiries about his venture -- made just before the election -- "entirely political."

Big supporters

Bush's parents joined Neil as Ignite investors in 1999, according to U.S. Securities and Exchange Commission documents. By 2003, the records show, Neil Bush had raised about $23 million from more than a dozen outside investors, including Mohammed Al Saddah, the head of a Kuwaiti company, and Winston Wong, the head of a Chinese computer firm.

Most recently he signed up Russian fugitive business tycoon Boris A. Berezovsky and Berezovsky's partner Badri Patarkatsishvili.

Barbara Bush has enthusiastically supported Ignite. In January 2004, she and Neil Bush were guests of honor at a $1,000-atable fundraiser in Oklahoma City organized by a foundation supporting the Western Heights School District. Proceeds were earmarked for the purchase of Ignite products.

Organizer Mary Blankenship Pointer said she planned the event because district students were "utilizing Ignite courseware and experiencing great results. Our students were thriving."

However, Western Heights school Supt. Joe Kitchens said the district eventually dropped its use of Ignite because it disagreed with changes Ignite had made in its products. "Our interest waned in it," he said.

The former first lady spurred controversy recently when she contributed to a Hurricane Katrina relief foundation for storm victims who had relocated to Texas. Her donation carried one stipulation: It had to be used by local schools for purchases of COWs.

Texas accounts for 75% of Ignite's business, which is expanding rapidly in other states, Deliganis said.

The company also has COWs deployed in North Carolina, Virginia, Nevada, California, the District of Columbia, Georgia and Florida, he said.

COWs recently showed up at Hill Classical Middle School in California's Long Beach Unified School District. A San Jose middle school also bought Ignite's products but has since closed.

Neil Bush said Ignite has more than 1,700 COWs in classrooms.

Shift in strategy

But Ignite's educational strategy has changed dramatically, and some are critical of its new approach. Shortly after Ignite was formed in Austin, Texas, in 1999, it bought the software developed by another small Austin firm, Adaptive Learning Technology.

Adaptive Learning founder Mary Schenck-Ross said the software's interactive lessons allowed teachers "to get away from the mass- treatment approach" to education. When a student typed in a response to a question, the software was designed to react and provide a customized learning path.

"The original concept was to avoid 'one size fits all.' That was the point," said Catherine Malloy, who worked on the software development.

Two years ago, however, Ignite dropped the individualized learning approach. Working with artists and illustrators, it created a large purple COW that could be wheeled from classroom to classroom and plugged in, offering lessons that could be played to a roomful of students.

The COWs enticed students with catchy jingles and videos featuring cartoon characters like Mr. Bighead and Norman Einstein. On Ignite's website, a collection of teachers endorsed the COW, saying that it eliminated the need for lesson planning. The COW does it for them.

The developers of Adaptive Learning's software complain that Ignite replaced individualized instruction with a gimmick.

"It breaks my heart what they have done. The concept was totally perverted," Schenck-Ross said.

Nevertheless, Ignite found many receptive school districts. In Texas, 30 districts use COWs.

In Houston, where Neil Bush and his parents live, the district has used various funding sources to acquire $400,000 in Ignite products. An additional $240,000 in purchases has been authorized in the last six months.

Correspondence obtained by The Times shows that Neil Bush met with top Houston officials, sent e-mails and left voice mail messages urging bigger and faster allocations. An e-mail from a school procurement official to colleagues said Bush had made it clear that he had a "good working relationship" with a school board member.

Another Ignite official asked a Texas state education official to endorse the company. In an e-mail, Neil Bush's partner Ken Leonard asked Michelle Ungurait, state director of social studies programs, to tell Houston officials her "positive impressions of our content, system and approach."

Ungurait, identified in another Leonard e-mail as "our good friend" at the state office, told her superiors in response to The Times' inquiry that she never acted on Leonard's request.

Leonard said he did not ask Ungurait to do anything that would be improper.

Houston school officials gave Ignite's products "high" ratings in eight categories and recommended approval.

Some in Houston's schools question the expenditures, however. Jon Dansby was teaching at Houston's Fleming Middle School when Ignite products arrived.

"You can't even get basics like paper and scissors, and we went out and bought them. I just see red," he said.

In Las Vegas, the schools have approved more than $300,000 in Ignite purchases. Records show the board recommended spending $150,000 in No Child Left Behind funding on Ignite products.

Sources familiar with the Las Vegas purchases said pressure to buy Ignite products came from Sig Rogich, an influential local figure and prominent Republican whose fundraising of more than $200,000 for President Bush's 2004 reelection campaign qualified him as a "Bush Ranger."

Rogich, who chairs a foundation that supports local schools, said he applied no pressure but became interested in COWs after Neil Bush contacted him. Rogich donated $6,000 to purchase two COWs for a middle school named after him.

Christy Falba, the former Clark County school official who oversaw the contracts, said she and her husband attended a dinner with Neil Bush to discuss the products. She said Rogich encouraged the district "to look at the Ignite program" but applied no pressure.

Mixed reviews

Few independent studies have been done to assess the effectiveness of Ignite's teaching strategies. Neil Bush said the company had gotten "great feedback" from educators and planned to conduct a "major scientifically valid study" to assess the COW's impact. The results should be in by next summer, he said.

Though Ignite's products get generally rave reviews from Texas educators, the opinion is not universal.

The Tornillo, Texas, Independent School District no longer uses the Ignite programs it purchased several years ago for $43,000.

"I wouldn't advise anyone else to use it," said Supt. Paul Vranish. "Nobody wanted to use it, and the principal who bought it is no longer here."

Ignite's website features glowing videotaped testimonials from teachers, administrators, students and parents.

Many of the videos were shot at Del Valle Junior High School near Austin, where school district officials allowed Ignite to film facilities and students.

In the video, a student named India says: "I was feeling bad about my grades. I didn't know what my teacher was talking about." The COW changed everything, the girl's father says on the video.

Lori, a woman identified as India's teacher, says the child was not paying attention until the COW was brought in.

The woman, however, is not India's teacher, but Lori Anderson, a former teacher and now Ignite's marketing director. Ignite says Anderson was simply role-playing.

In return for use of its students and facilities, a district spokeswoman said Ignite donated a free COW. Five others were purchased with district funds.

District spokeswoman Celina Bley acknowledged that regulations bar school officials from endorsing products. But she said that restriction did not apply to the videos.

"It is illegal for individuals to make an endorsement, but this was a districtwide endorsement," Bley said in an e-mail.

wally.roche@latimes.com

**[Illustration]**
Caption: PHOTO: 'CURRICULUM ON WHEELS': Christopher Miller of Ignite! Learning busies himself at the company's booth at a Florida science teachers' conference in Gainesville.; PHOTOGRAPHER: Oscar Sosa For The Times; PHOTO: NEIL BUSH: He says Ignite's growth is not due to political influence.; PHOTOGRAPHER: David Kohl Associated Press

Credit: Times Staff Writer

Reproduced with permission of the copyright owner. Further reproduction or distribution is prohibited without permission.

**EXHIBIT 2**



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF MANAGEMENT

June 20, 2007

Mr. Daniel C. Roth
Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, NW, Suite 450
Washington, DC  20005

RE: FOIA Request No. 07-00661-F

Dear Mr. Roth:

This letter is in response to your fax dated May 16, 2007 requesting information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  Your request was received in this office on May 17, 2007. You asked for the following information:

Any records dating from January 20, 2001, through the present, from the following Department of Education offices:

1. Office of the Secretary, including the offices of the Chief of Staff and Senior Counselor,
2. Office of the Deputy Secretary,
3. Office of Elementary and Secondary Education,
4. any other office in which there are staff members whose duties include implementation of the No Child Left Behind Act of 2001,

of or relating to any contact with the following individuals or entities:

3. Ignite! Learning a/k/a Ignite!, or any officer or employee thereof,
4. Curriculum on Wheels a/k/a COWs,
5. Neil Bush,
6. Barbara Bush,
7. Ken Leonard,
8. Lori Anderson,
9. Ashleigh Snyder, and
10. Sid Rogich.

We are unable to process your request at this time.  As you are aware, FOIA requests must reasonably describe the records that are sought in order for Department employees, with knowledge of the subject matter, to identify and locate potentially responsive documents. 5 U.S.C. § 552(a)(3)(A) (2000).  Your request seeks access to "any records [of various Department offices] … of or relating to any contact [with specifically named individuals or entities]."  Your request as stated does not describe the records sought with a reasonable amount of detail such that a Department employee would be able to locate potentially responsive documents with a reasonable amount of effort. See Dale v. Internal Revenue Service,

400 MARYLAND AVE., S.W., WASHINGTON, DC 20202-4500
www.ed.gov

Our mission is to ensure equal access to education and to promote educational excellence throughout the nation.

Page 2 of 4 Citizens for Responsibility and Ethics in Washington
No. 07-00661-F

238 F.Supp.2d 99 (D. D.C. 2002). Consequently, the Department is unable to process your request as it is currently stated.

## Fee Waiver

In addition, you have requested a fee waiver for your request. The requester bears the burden of justifying entitlement to a fee waiver. See Casad v. Department of Health & Human Services, 2003 U.S. Dist. LEXIS 13007 (D. D.C. June 20, 2003). To meet this burden, a requester must satisfy two statutory requirements before the Department may waive or reduce properly assessed fees: (1) disclosure of the information must be in the public interest because the information primarily benefits the general public and is likely to contribute significantly to public understanding of the operations or activities of the government; and (2) disclosure of the information must not be primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii)(2000); see also 34 C.F.R. § 5.64(a). Moreover, a requester must address both factors in sufficient detail in order for an agency to determine whether it can reduce or waive the fees. Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309 (D.C. Cir. 2003).

In order to determine whether the disclosure of the information responsive to the request furthers the narrow public interest cognizable under the FOIA, the Department must consider the following four (4) factors in sequence:

5. The subject matter of the requested records themselves must specifically concern identifiable "operations or activities of the government";
6. In order for the disclosure to be "likely to contribute" to an understanding of specific government operations or activities, the disclosable portions of the requested information must be meaningfully informative in relation to the subject matter of the request;
7. The disclosure must contribute to the "understanding of the public at large," as opposed to that of the individual requester or a narrow segment of interested persons; and
8. The disclosure must "contribute significantly" to public understanding of government operations or activities.

See Judicial Watch, Inc. v. Department of Justice, No. 03-5093, 2004 WL 980826 (D.C. Cir. May 7, 2004); see also 34 C.F.R. § 5.64(b)(1) and (2). Only if all four elements have been met will the Department conclude that a requester has satisfied the first prong of the public interest element of the statutory requirement for a fee waiver.

Where the Department concludes that the public interest requirement has been met, it may waive or reduce applicable fees only where it also finds that "disclosure of the information . . . is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii)(2000). In order to determine whether this second requirement has been satisfied, the Department must consider the following two factors in sequence:

3. Does the request involve any "commercial interest of the requester" (if not, the requester satisfies the second prong of the statutory fee waiver test); and
4. If so, the agency must balance the requester's commercial interest against the identified public interest in disclosure for the purpose of ascertaining which is the "primary interest"; a fee waiver or reduction may be granted only where the public interest in disclosure is greater in magnitude than the requester's commercial interest.

See also 34 C.F.R. § 5.64(b)(3).

Page 3 of 4 Citizens for Responsibility and Ethics in Washington
No. 07-00661-F

For your information, the Department does not customarily grant blanket waivers, but rather considers each waiver request on a case-by-case basis.

The Department has reviewed your request and denies the request because it fails to satisfy the first factor of the public interest analysis. As stated above, the first factor of the public interest analysis requires the subject matter of the requested records must specifically concern an identifiable operation or activity of the government. In order to satisfy this element, the requester must identify a nexus between the requested records and the benefit to the public. See Nat'l Treasury Employees Union v. Griffin, 811 F.2d 644 (D.C. Cir. 1987). Moreover, the requester must satisfy this burden with a level of specificity, beyond generalized statements that the request somehow relates to a government operation or activity. Judicial Watch v. U.S. Dep't of Justice, 122 F.Supp.2d 5, 9 (D. D.C. 2000); see Larson v. C.I.A., 843 F.2d 1481, 1483 (D.C. Cir. 1988).

In your request, you state, "these records are likely to contribute to the public's understanding of an educational product that is apparently being utilized by a quarter million public schools students in 19 states, the District of Columbia and Puerto Rico." As stated above, the Department has concluded that your request does not reasonably describe the records sought. Assuming for the sake of argument that your request did reasonably describe the records sought, you have not stated how the requested records relate to a specific government activity or operation. At most, you indicate that there are "at least thirteen school districts were reportedly paying for [the educational] Ignite! products with money received by the states under the No Child Left Behind Act of 2001." There are several Department programs that receive funds under the No Child Left Behind Act of 2001. Your request fails to identify a specific program under which a state might pay for educational products through funds made available pursuant to the No Child Left Behind Act of 2001. Without such information, your request is nothing more than a fishing expedition through government files.

In sum, the Department's denies your request for a fee waiver in the present case. Since you have failed to meet your burden regarding a fundamental threshold requirement of the legal standard for analyzing fee waiver requests under the FOIA, the Department cannot address the remaining factors of the fee waiver analysis. However, the Department may reconsider this decision should you choose to submit supplemental or clarifying information.

Fees are charged for searching/reviewing and duplication for responsive records. The fee is calculated in accordance with 5 U.S.C. § 552(a)(4)(A)(ii)(III), 5 U.S.C. § 552(a)(4)(A)(iv)(II) and 34 CFR § 5.61. The search and the review fee are calculated based on the hourly rate of pay, plus 16% administrative charge and the duplication costs are ten cents per photocopied page. Our regulations, 34 CFR § 5.61 require us to allow you to modify your request if the cost is more than $25.00. In addition, in accordance with 34 CFR § 5.62(a)(2), if the cost is to be greater than $250.00, the requester must pay in advance.

You have the right to appeal this decision by writing, within 30 days of your receipt of this letter. Your appeal should be received by the FOIA office on or before July 25, 2007. Your appeal should be accompanied by a copy of your initial letter of request and this denial letter, and should contain any evidence or argument you wish the Department to consider in making an administrative determination on your appeal.

Page 4 of 4 Citizens for Responsibility and Ethics in Washington
No. 07-00661-F

**<u>Appeal Address:</u>**

U.S. Department of Education
Chief Information Officer
400 Maryland Avenue, SW, FOB-6-2W311
ATTN:  FOIA Appeals
Washington, DC  20202-4500

Once we receive your clarification and the issues regarding charges are resolved, we will begin
processing your request.  Please send your clarification letter to the U.S. Department of Education,
ATTN: FOIA Office, 400 Maryland Avenue, SW, PCP 9th Floor, Washington, DC  20202-4700, or send it
by e-mail: EDFOIAManager@ed.gov.

If you have any questions regarding this letter, please contact Angela Arrington or myself at
202-245-6615.

Sincerely,

Maria-Teresa Cueva
FOIA Public Liaison, OM/RIMS

**EXHIBIT 3**

# CREW | citizens for responsibility and ethics in washington

July 3, 2007

Ms. Maria-Teresa Cueva
U.S. Department of Education
ATTN: FOIA Office
400 Maryland Avenue, S.W.
PCP 9th Floor
Washington, D.C. 20202-4700

      By electronic and first class mail

      Re: FOIA Request No. 07-00661-F

Dear Ms. Cueva:

      On May 16, 2007, Citizens for Responsibility and Ethics in Washington ("CREW") sent a Freedom of Information Act ("FOIA") request to the Department of Education ("Education") seeking documents relating to contacts with specified individuals and/or entities associated with Ignite! Learning (attached as Exhibit A). Specifically, CREW requested records from three identified offices as well as any office with staff members whose duties include implementing the No Child Left Behind Act of 2001 that reflect contacts with the following eight entities or individuals: (1) Ignite! Learning, a/k/a Ignite!, or any officer or employee thereof; (2) Curriculum on Wheels, a/k/a/ COWs; (3) Neil Bush; (4) Barbara Bush; (5) Ken Leonard; (6) Lori Anderson; (7) Ashleigh Snyder; and (8) Sid Rogich.

      By letter dated June 20, 2007, you responded that Education is unable to process CREW's request as currently drafted because it does not "describe the records sought with a reasonable amount of detail such that a Department employee would be able to locate potentially responsive documents with a reasonable amount of effort." Letter from Maria-Teresa Cueva, U.S. Department of Education, to Daniel C. Roth, CREW (June 20, 2007) (citation omitted) (attached as Exhibit B). You provided CREW with an opportunity to clarify its request.[1] CREW now responds to Education's contention that CREW's May 16, 2007 FOIA request does not reasonably describe the records we seek.

      First, Education's conclusion is completely without factual support and rests on a mere recitation of the legal standard FOIA prescribes, with no explanation of how CREW's request

---

[1] Your June 20, 2007 letter also addressed CREW's request for a fee waiver. CREW is separately appealing Education's initial determination to deny CREW a fee waiver.



falls short of that standard. Generic boilerplate is not an adequate substitute for Education's obligation to explain how CREW does not satisfy its obligation under the FOIA to "reasonably describe" the records it is seeking, 5 U.S.C. § 552(a)(3)(A).

Second, Education's conclusion is contradicted by the substance of CREW's request, which identifies the specific offices from which records are sought and the specific kinds of records CREW seeks, i.e., records that reflect contacts with eight specified individuals or entities. Indeed, CREW crafted this request after considering Education's response to CREW's prior request of March 28, 2007, which also sought documents of Education contacts or communications relating to four categories. In finding that CREW's March 28 request did not reasonably describe the records it was seeking, Education explained that the request "encompass[es] a large volume of information on broad topics related to individuals in the Department and 'White House staff,' without identifying specific individuals, offices, or subjects." Letter from Maria-Teresa Cueva to Daniel C. Roth (Apr. 16, 2007) (attached as Exhibit C). During a May 9 telephone conversation between CREW's counsel and Education officials, various Education personnel stated that CREW's March 28 request for records from "any Department office, including any and all field offices" was too broad as it would require a search of each Department of Education 4,500 employees' email files. In response, CREW narrowed its request to name specific offices from which we were seeking documents. Email from Daniel C. Roth to Angela Arrington, U.S. Department of Education (May 21, 2007) (attached as Exhibit D). Education did not object to CREW's narrowed proposal.

With this experience in mind, CREW drafted the May 16 FOIA to focus on an extremely narrow topic -- eight listed individuals and entities -- and the records only of a carefully-selected group of three Education offices.[2] That Education is now claiming it also cannot process this very specific and narrow request suggests Education is not acting in good faith to meet its statutory obligations under the FOIA but, instead, seeks to delay or avoid altogether responding to CREW's proper FOIA requests.

Moreover, CREW has made a nearly identical request of the Department of Commerce ("Commerce") and that agency -- far from responding that it cannot process the request -- has nearly completed its processing. CREW's May 16, 2007 FOIA request of Commerce seeks any records:

... related to or referencing in any way Ignite! Learning, a/k/a Ignite! or Curriculum on Wheels, a/k/a COWS. Included in this request are records of or relating to any contact that any office of the Department of Commerce, including any and all field offices, may have

---

[2] Item 4 requests that the Department search "any other office in which there are staff members whose duties include implementation of the No Child Left Behind Act of 2001" ("NCLB"). This item can only be narrowed with more information from the Department. CREW's request is focused on an educational software and hardware product that is being paid for with NCLB funds around the country. To the extent the Department is willing to tell us who is involved with this type of work, CREW will readily narrow Item 4.

had with any officer or employee of Ignite! Learning, a/k/a Ignite!, including, but not limited to:

     (1) Neil Bush,
     (2) Barbara Bush,
     (3) Ken Leonard,
     (4) Lori Anderson,
     (5) Ashleigh Snyder and
     (6) Sid Rogich.

(Exhibit E).

Even though the terms of CREW's FOIA request to Commerce are broader than its May FOIA request to Education, Commerce has had no problem processing the request. Although Commerce did request that CREW narrow its FOIA request to particular offices, it worked cooperatively with CREW to identify the offices most likely to have responsive records. Of the three Commerce offices from which CREW is now seeking records, one has completed its search and the others expect to complete their processing by July 16, 2007. Thus, with the slightest amount of cooperative narrowing, and without ever suggesting CREW had failed to reasonably describe records it was seeking, another agency will have processed in two months' time what Education says is an unworkable request.

CREW's experience with Commerce is similar to the experience CREW has had with multiple agencies on a wide variety of topics. In the past four years, CREW has filed over 115 FOIA requests that typically seek documents from any office within the agency, including any and all field offices. No agency except Education has taken issue with this request. Moreover, while CREW frequently narrows its request, working cooperatively with the agency on how to best capture the records it seeks, it has not until now encountered the response that the agency was completely unable to process its request.

Given CREW's past experience, including its experience with Education concerning CREW's March 28, 2007 FOIA request, we can only conclude one of two things: either Education seeks to evade its responsibilities under the FOIA or, alternatively, Education's electronic record-keeping systems are not susceptible to a search for documents responsive to CREW's request. In this regard, we seek clarification from Education as to whether its electronic files are keyword or recipient searchable, or capable of being searched using some other method. If Education's electronic files are not searchable, please confirm whether or not Education maintains paper copies of those same records that can be searched in response to CREW's FOIA request.

Taking these issues into account, please clarify and explain the reasons the Department cannot process CREW's request of May 16, 2007.  I will be happy to answer any questions, and can be reached at (202) 408-5565, or droth@citizensforethics.org.

Sincerely,

Daniel C. Roth
Citizens for Responsibility and
 Ethics in Washington
1400 Eye Street, N.W.
Suite 450
Washington, D.C. 20005

**EXHIBIT A**

# CREW | citizens for responsibility and ethics in washington

May 16, 2007

Office of Management
Regulatory Information Management Services
U.S. Department of Education
400 Maryland Avenue, SW, PCP 9143
Washington, DC 20202-4700

**By Fax, (202) 245-6623, and First Class mail**

**Re: Freedom of Information Act Request**

Dear Sir/Madam:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, pursuant to the Freedom of Information Act ("FOIA") and Department of Education ("Department") regulations, 34 C.F.R. §§ 5.6 et. seq.

Specifically, CREW seeks any records dating from January 20, 2001, through the present, from the following Department of Education offices:

(1) Office of the Secretary, including the offices of the Chief of Staff and Senior Counselor,
(2) Office of the Deputy Secretary,
(3) Office of Elementary and Secondary Education
(4) any other office in which there are staff members whose duties include implementation of the No Child Left Behind Act of 2001,

of or relating to any contact with the following individuals or entities:

(1) Ignite! Learning a/k/a Ignite!, or any officer or employee thereof,
(2) Curriculum on Wheels a/k/a COWs,
(3) Neil Bush,
(4) Barbara Bush,
(5) Ken Leonard,
(6) Lori Anderson,
(7) Ashleigh Snyder and
(8) Sid Rogich.

Please search responsive records regardless of format, medium or physical characteristics. Where possible, please produce records electronically in PDF or TIF format on a CD-ROM. We seek records of any kind, including electronic records, audiotapes, videotapes and photographs. Our request includes any telephone messages, voice mail messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions and transcripts or notes of any such meetings and/or discussions.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide an index of those documents as required under <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert. denied</u>, 415 U.S. 977 (1972). As you are aware, a <u>Vaughn</u> index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the <u>Vaughn</u> index must "describe each document or portion thereof withheld, and for **each** withholding it must discuss the consequences of supplying the sought-after information." <u>King v. U.S. Dep't of Justice</u>, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" <u>Id.</u> at 224 (citing <u>Mead Data Central v. U.S. Dep't of the Air Force</u>, 566 F.2d 242, 251 (D.C. Cir. 1977).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. <u>See</u> 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. <u>Mead Data Central</u>, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a <u>Vaughn</u> index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

## **Fee Waiver Request**

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 34 C.F.R. § 5.64, CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government programs and procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-

commercial purposes. 5 U.S.C. § 552(a)(4)(A)(iii).  See, e.g., McClellan Ecological v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987).

Specifically, these records are likely to contribute to the public's understanding of an educational product that apparently is being or has been utilized by a quarter million public school students in 19 states, the District of Columbia and Puerto Rico.  Press Release, Ignite! Learning, Ignite! Learning Surpasses Milestone Reaching More Than 250,000 Students (Jan. 22, 2007) (attached as Exhibit A).  As of October 2006, at least thirteen school districts were reportedly paying for Ignite! products with money received by the states under the No Child Left Behind Act of 2001.  See Walter F. Roche, Jr., Bush's Family Profits from 'No Child' Act, LA Times, Oct. 22, 2006 (attached as Exhibit B).

CREW is a non-profit corporation organized under section 501(c)(3) of the Internal Revenue Code.  CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials.  CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process.  CREW uses a combination of research, litigation, and advocacy to advance its mission.  The release of information garnered through this request is not in CREW's financial interest.  CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memoranda, reports or press releases. See, e.g. Hurricane Katrina International Relief; State Department documents reveal difficult coordination with other federal agencies, Citizens for Responsibility and Ethics in Washington (July 5, 2006), available at http://www.citizensforethics.org/files//DOSDocumentSummary.pdf. In addition, CREW will disseminate any documents it acquires from this request to the public. CREW has established an interactive website where members of the public can analyze and comment on public documents, including documents CREW acquires through the FOIA.  See http://foia.citizensforethics.org/home.  Currently, this site contains links to thousands of pages of documents CREW acquired from multiple FOIA requests.  CREW's main website, www.citizensforethics.org, also includes documents relating to CREW's FOIA litigation, Internal Revenue complaints and Federal Election Commission complaints.  As CREW's websites demonstrate, CREW has an established history of acquiring documents through the FOIA and publishing them on its website for public use.

Under these circumstances, CREW fully satisfies the criteria for a fee waiver.

## Conclusion

Please respond to this request in writing within 20 days as required under 5 U.S.C. § 552(a)(6)(A)(I).  If all of the requested documents are not available within that time period, CREW requests that you provide all requested documents or portions of documents which are available within that time period.

If you have any questions about this request or foresee any problems in releasing fully the requested records within the twenty-day period, please contact me at (202) 408-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination. Please send the requested documents to Daniel C. Roth, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C. 20005.

Sincerely,

Daniel C. Roth
Counsel
Citizens for Responsibility and Ethics in Washington

Enclosures

**EXHIBIT A**



*For Immediate Release*

Contact:
Scott Campbell
Phillips and Company
(512) 423-4907
dscampbell@phillipscompany.com

## Ignite! Learning Surpasses Milestone Reaching More Than 250,000 Students

*Innovative curriculum solution serves more than 10,000 science and social studies classrooms*

AUSTIN, Texas – January 22, 2007 – Ignite! Learning, an educational curriculum publishing company, today announced that the Curriculum On Wheels (COW) now reaches more than 250,000 students in more than 10,000 science and social studies classrooms across the United States, making the COW one of the nation's fastest growing curriculum solutions being adopted by teachers today.

The Curriculum On Wheels is aligned to state standards and provides a comprehensive curriculum for middle school and upper elementary instruction. Teachers use the COW to enhance classroom education with pre-developed science and social studies lessons that augment students' learning and retention.

The Science or Social Studies COW comes preloaded with a complete academic year of daily use curriculum covering all middle school grades, including lesson plans, classroom and student activities, unit tests as well as media to engage students resulting in active learning. Each lesson leverages two to three media pieces that comprise animation, video, images, text and music to reinforce key material while fostering critical thinking through the lesson plans and activities.

The COW is a turnkey solution; teachers simply plug it in and it works. In addition to curricula, the portable unit contains a built-in computer, projector and speakers that help teachers instruct more effectively without the trouble associated with cumbersome technology-related products.

Ignite! Learning has placed 2,000 COWs in 19 states, the District of Columbia and Puerto Rico. Each COW serves an average of 125 students per semester. Ignite! expects to triple its sales for each of the next three to five years, dramatically increasing the number of teachers and students who will benefit from the easy-to-use, results-oriented curricula.

Ignite! Learning President Ken Leonard said, "We spend most of our time listening – listening to teachers and school districts to better understand what they need to help them succeed in their efforts to enhance classroom

instruction. We have designed the COW around the way teachers want to teach and that has made all the difference."

Moreover, pass rates for standardized testing in some school districts using the COWs have increased 20 to 40 percent. For example, after the Science COW was used for one semester at Burnet Elementary in the Midland (Texas) Independent School District, the test scores for Burnet's economically disadvantaged population increased from a 67 percent passing rate in 2005 to 87 percent in 2006. According to Burnet Principal Kellie Ebenstein, those increases are 29 percent higher than similar students in the region based on the Accountability Data Tables from The Texas Education Agency.

"Reaching the 250,000 student milestone is significant for us; however, what inspires us most is how regular use of the COW translates into academic improvement gains in classrooms in 19 states. The COW motivates teachers and students to learn, and the improved test scores that result provide school communities with measurable evidence of our positive impact" said Leonard. "We know we're making a real difference in teachers and students' lives each and every day."

**About Ignite Learning**

Ignite! is committed to helping teachers by creating classroom solutions that are comprehensive, motivational, and easy to use. The company's curriculum is rooted in current research on best practices for middle and upper elementary schools. School districts and public and private schools in more than 19 states as well as the District of Columbia and Puerto Rico have adopted the Ignite! Curriculum On Wheels to help improve student performance in science and social studies. Ignite! plans to release a comprehensive mathematics curriculum in 2007. For more information on Ignite! Learning, visit www.ignitelearning.com.

Ignite! ™, Curriculum on Wheels™, COW™ and the Ignite! Learning logo are trademarks of Ignite! Inc. All other trademarks herein are properties of their respective owners. All rights reserved.

EXHIBIT B

**THE NATION**
*BUSH'S FAMILY PROFITS FROM 'NO CHILD' ACT*
*[HOME EDITION]*

Los Angeles Times - Los Angeles, Calif.
Author:            Walter F. Roche Jr.
Date:              Oct 22, 2006
Section:           Main News; Part A; National Desk
Document Types:    News
Text Word Count:   1887

**Document Text**

(Copyright (c) 2006 Los Angeles Times)

A company headed by President Bush's brother and partly owned by his parents is benefiting from Republican connections and federal dollars targeted for economically disadvantaged students under the No Child Left Behind Act.

With investments from his parents, George H.W. and Barbara Bush, and other backers, Neil Bush's company, Ignite! Learning, has placed its products in 40 U.S. school districts and now plans to market internationally.

At least 13 U.S. school districts have used federal funds available through the president's signature education reform, the No Child Left Behind Act of 2001, to buy Ignite's portable learning centers at $3,800 apiece.

The law provides federal funds to help school districts better serve disadvantaged students and improve their performance, especially in reading and math.

But Ignite does not offer reading instruction, and its math program will not be available until next year.

The federal Department of Education does not monitor individual school district expenditures under the No Child program, but sets guidelines that the states are expected to enforce, spokesman Chad Colby said.

Ignite executive Tom Deliganis said that "some districts seem to feel OK" about using No Child money for the Ignite purchases, "and others do not."

Neil Bush said in an e-mail to The Times that Ignite's program had demonstrated success in improving the test scores of economically disadvantaged children. He also said political influence had not played a role in Ignite's rapid growth.

"As our business matures in the USA we have plans to expand overseas and to work with many distinguished individuals in Asia, Europe, the Middle East and Africa," he wrote. "Not one of these associates by the way has ever asked for any access to either of my political brothers, not one White House tour, not one autographed photo, and not one Lincoln bedroom overnight stay."

Funding laws unclear

Interviews and a review of school district documents obtained under the Freedom of Information Act found that educators and legal experts were sharply divided over whether Ignite's products were worth their cost or qualified under the No Child law.

The federal law requires schools to show they are meeting educational standards, or risk losing critical funding. If students fail to meet annual performance goals in reading and math tests, schools must supplement their educational offerings with tutoring and other special programs.

Leigh Manasevit, a Washington attorney who specializes in federal education funding, said that districts using the No Child funds to buy products like Ignite's would have to meet "very strict" student eligibility requirements and ensure that the Ignite services were supplemental to existing programs.

Known as COW, for Curriculum on Wheels (the portable learning centers resemble cows on wheels), Ignite's product line is geared toward middle school social studies, history and science. The company says it has developed a social studies program that meets curriculum requirements in seven states. Its science program meets requirements in six states.

Most of Ignite's business has been obtained through sole-source contracts without competitive bidding. Neil Bush has been directly involved in marketing the product.

In addition to federal or state funds, foundations and corporations have helped buy Ignite products. The Washington Times Foundation, backed by the Rev. Sun Myung Moon, head of the South Korea-based Unification Church, has peppered classrooms throughout Virginia with Ignite's COWs under a $1-million grant.

Oil companies and Middle East interests with long political ties to the Bush family have made similar bequests. Aramco Services Co., an arm of the Saudi-owned oil company, has donated COWs to schools, as have Apache Corp., BP and Shell Oil Co.

Neil Bush said he is a businessman who does not attempt to exert political influence, and he called The Times' inquiries about his venture -- made just before the election -- "entirely political."

Big supporters

Bush's parents joined Neil as Ignite investors in 1999, according to U.S. Securities and Exchange Commission documents. By 2003, the records show, Neil Bush had raised about $23 million from more than a dozen outside investors, including Mohammed Al Saddah, the head of a Kuwaiti company, and Winston Wong, the head of a Chinese computer firm.

Most recently he signed up Russian fugitive business tycoon Boris A. Berezovsky and Berezovsky's partner Badri Patarkatsishvili.

Barbara Bush has enthusiastically supported Ignite. In January 2004, she and Neil Bush were guests of honor at a $1,000-a-table fundraiser in Oklahoma City organized by a foundation supporting the Western Heights School District. Proceeds were earmarked for the purchase of Ignite products.

Organizer Mary Blankenship Pointer said she planned the event because district students were "utilizing Ignite courseware and experiencing great results. Our students were thriving."

However, Western Heights school Supt. Joe Kitchens said the district eventually dropped its use of Ignite because it disagreed with changes Ignite had made in its products. "Our interest waned in it," he said.

The former first lady spurred controversy recently when she contributed to a Hurricane Katrina relief foundation for storm victims who had relocated to Texas. Her donation carried one stipulation: It had to be used by local schools for purchases of COWs.

Texas accounts for 75% of Ignite's business, which is expanding rapidly in other states, Deliganis said.

The company also has COWs deployed in North Carolina, Virginia, Nevada, California, the District of Columbia, Georgia and Florida, he said.

COWs recently showed up at Hill Classical Middle School in California's Long Beach Unified School District. A San Jose middle school also bought Ignite's products but has since closed.

Neil Bush said Ignite has more than 1,700 COWs in classrooms.

Shift in strategy

But Ignite's educational strategy has changed dramatically, and some are critical of its new approach. Shortly after Ignite was formed in Austin, Texas, in 1999, it bought the software developed by another small Austin firm, Adaptive Learning Technology.

Adaptive Learning founder Mary Schenck-Ross said the software's interactive lessons allowed teachers "to get away from the mass- treatment approach" to education. When a student typed in a response to a question, the software was designed to react and provide a customized learning path.

"The original concept was to avoid 'one size fits all.' That was the point," said Catherine Malloy, who worked on the software development.

Two years ago, however, Ignite dropped the individualized learning approach. Working with artists and illustrators, it created a large purple COW that could be wheeled from classroom to classroom and plugged in, offering lessons that could be played to a roomful of students.

The COWs enticed students with catchy jingles and videos featuring cartoon characters like Mr. Bighead and Norman Einstein. On Ignite's website, a collection of teachers endorsed the COW, saying that it eliminated the need for lesson planning. The COW does it for them.

The developers of Adaptive Learning's software complain that Ignite replaced individualized instruction with a gimmick.

"It breaks my heart what they have done. The concept was totally perverted," Schenck-Ross said.

Nevertheless, Ignite found many receptive school districts. In Texas, 30 districts use COWs.

In Houston, where Neil Bush and his parents live, the district has used various funding sources to acquire $400,000 in Ignite products. An additional $240,000 in purchases has been authorized in the last six months.

Correspondence obtained by The Times shows that Neil Bush met with top Houston officials, sent e-mails and left voice mail messages urging bigger and faster allocations. An e-mail from a school procurement official to colleagues said Bush had made it clear that he had a "good working relationship" with a school board member.

Another Ignite official asked a Texas state education official to endorse the company. In an e-mail, Neil Bush's partner Ken Leonard asked Michelle Ungurait, state director of social studies programs, to tell Houston officials her "positive impressions of our content, system and approach."

Ungurait, identified in another Leonard e-mail as "our good friend" at the state office, told her superiors in response to The Times' inquiry that she never acted on Leonard's request.

Leonard said he did not ask Ungurait to do anything that would be improper.

Houston school officials gave Ignite's products "high" ratings in eight categories and recommended approval.

Some in Houston's schools question the expenditures, however. Jon Dansby was teaching at Houston's Fleming Middle School when Ignite products arrived.

"You can't even get basics like paper and scissors, and we went out and bought them. I just see red," he said.

In Las Vegas, the schools have approved more than $300,000 in Ignite purchases. Records show the board recommended spending $150,000 in No Child funding on Ignite products.

Sources familiar with the Las Vegas purchases said pressure to buy Ignite products came from Sig Rogich, an influential local figure and prominent Republican whose fundraising of more than $200,000 for President Bush's 2004 reelection campaign qualified him as a "Bush Ranger."

Rogich, who chairs a foundation that supports local schools, said he applied no pressure but became interested in COWs after Neil Bush contacted him. Rogich donated $6,000 to purchase two COWs for a middle school named after him.

Christy Falba, the former Clark County school official who oversaw the contracts, said she and her husband attended a dinner with Neil Bush to discuss the products. She said Rogich encouraged the district "to look at the Ignite program" but applied no pressure.

Mixed reviews

Few independent studies have been done to assess the effectiveness of Ignite's teaching strategies. Neil Bush said the company had gotten "great feedback" from educators and planned to conduct a "major scientifically valid study" to assess the COW's impact. The results should be in by next summer, he said.

Though Ignite's products get generally rave reviews from Texas educators, the opinion is not universal.

The Tornillo, Texas, Independent School District no longer uses the Ignite programs it purchased several years ago for $43,000.

"I wouldn't advise anyone else to use it," said Supt. Paul Vranish. "Nobody wanted to use it, and the principal who bought it is no longer here."

Ignite's website features glowing videotaped testimonials from teachers, administrators, students and parents.

Many of the videos were shot at Del Valle Junior High School near Austin, where school district officials allowed Ignite to film facilities and students.

In the video, a student named India says: "I was feeling bad about my grades. I didn't know what my teacher was talking about." The COW changed everything, the girl's father says on the video.

Lori, a woman identified as India's teacher, says the child was not paying attention until the COW was brought in.

The woman, however, is not India's teacher, but Lori Anderson, a former teacher and now Ignite's marketing director. Ignite says Anderson was simply role-playing.

In return for use of its students and facilities, a district spokeswoman said Ignite donated a free COW. Five others were purchased with district funds.

District spokeswoman Celina Bley acknowledged that regulations bar school officials from endorsing products. But she said that restriction did not apply to the videos.

"It is illegal for individuals to make an endorsement, but this was a districtwide endorsement," Bley said in an e-mail.

wally.roche@latimes.com

[Illustration]
Caption: PHOTO: 'CURRICULUM ON WHEELS': Christopher Miller of Ignitel Learning busies himself at the company's booth at a Florida science teachers' conference in Gainesville.; PHOTOGRAPHER: Oscar Sosa For The Times; PHOTO: NEIL BUSH: He says Ignite's growth is not due to political influence.; PHOTOGRAPHER: David Kohl Associated Press

Credit: Times Staff Writer

Reproduced with permission of the copyright owner. Further reproduction or distribution is prohibited without permission.

**EXHIBIT B**



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF MANAGEMENT

June 20, 2007

Mr. Daniel C. Roth
Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, NW, Suite 450
Washington, DC  20005

RE: FOIA Request No. 07-00661-F

Dear Mr. Roth:

This letter is in response to your fax dated May 16, 2007 requesting information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  Your request was received in this office on May 17, 2007. You asked for the following information:

> Any records dating from January 20, 2001, through the present, from the following Department of Education offices:
>
> 1.  Office of the Secretary, including the offices of the Chief of Staff and Senior Counselor,
> 2.  Office of the Deputy Secretary,
> 3.  Office of Elementary and Secondary Education,
> 4.  any other office in which there are staff members whose duties include implementation of the No Child Left Behind Act of 2001,

of or relating to any contact with the following individuals or entities:

> 3.  Ignite! Learning a/k/a Ignite!, or any officer or employee thereof,
> 4.  Curriculum on Wheels a/k/a COWs,
> 5.  Neil Bush,
> 6.  Barbara Bush,
> 7.  Ken Leonard,
> 8.  Lori Anderson,
> 9.  Ashleigh Snyder, and
> 10. Sid Rogich.

We are unable to process your request at this time.  As you are aware, FOIA requests must reasonably describe the records that are sought in order for Department employees, with knowledge of the subject matter, to identify and locate potentially responsive documents. 5 U.S.C. § 552(a)(3)(A) (2000).  Your request seeks access to "any records [of various Department offices] … of or relating to any contact [with specifically named individuals or entities]."  Your request as stated does not describe the records sought with a reasonable amount of detail such that a Department employee would be able to locate potentially responsive documents with a reasonable amount of effort. See Dale v. Internal Revenue Service,

400 MARYLAND AVE., S.W., WASHINGTON, DC 20202-4500
www.ed.gov

Our mission is to ensure equal access to education and to promote educational excellence throughout the nation.

Page 2 of 4 Citizens for Responsibility and Ethics in Washington
No. 07-00661-F

238 F.Supp.2d 99 (D. D.C. 2002). Consequently, the Department is unable to process your request as it is currently stated.

**Fee Waiver**
In addition, you have requested a fee waiver for your request. The requester bears the burden of justifying entitlement to a fee waiver. See Casad v. Department of Health & Human Services, 2003 U.S. Dist. LEXIS 13007 (D. D.C. June 20, 2003). To meet this burden, a requester must satisfy two statutory requirements before the Department may waive or reduce properly assessed fees: (1) disclosure of the information must be in the public interest because the information primarily benefits the general public and is likely to contribute significantly to public understanding of the operations or activities of the government; and (2) disclosure of the information must not be primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii)(2000); see also 34 C.F.R. § 5.64(a). Moreover, a requester must address both factors in sufficient detail in order for an agency to determine whether it can reduce or waive the fees. Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309 (D.C. Cir. 2003).

In order to determine whether the disclosure of the information responsive to the request furthers the narrow public interest cognizable under the FOIA, the Department must consider the following four (4) factors in sequence:

5.  The subject matter of the requested records themselves must specifically concern identifiable "operations or activities of the government";
6.  In order for the disclosure to be "likely to contribute" to an understanding of specific government operations or activities, the disclosable portions of the requested information must be meaningfully informative in relation to the subject matter of the request;
7.  The disclosure must contribute to the "understanding of the public at large," as opposed to that of the individual requester or a narrow segment of interested persons; and
8.  The disclosure must "contribute significantly" to public understanding of government operations or activities.

See Judicial Watch, Inc. v. Department of Justice, No. 03-5093, 2004 WL 980826 (D.C. Cir. May 7, 2004); see also 34 C.F.R. § 5.64(b)(1) and (2). Only if all four elements have been met will the Department conclude that a requester has satisfied the first prong of the public interest element of the statutory requirement for a fee waiver.

Where the Department concludes that the public interest requirement has been met, it may waive or reduce applicable fees only where it also finds that "disclosure of the information . . . is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii)(2000). In order to determine whether this second requirement has been satisfied, the Department must consider the following two factors in sequence:

3.  Does the request involve any "commercial interest of the requester" (if not, the requester satisfies the second prong of the statutory fee waiver test); and
4.  If so, the agency must balance the requester's commercial interest against the identified public interest in disclosure for the purpose of ascertaining which is the "primary interest"; a fee waiver or reduction may be granted only where the public interest in disclosure is greater in magnitude than the requester's commercial interest.

See also 34 C.F.R. § 5.64(b)(3).

Page 3 of 4 Citizens for Responsibility and Ethics in Washington
No. 07-00661-F

For your information, the Department does not customarily grant blanket waivers, but rather considers each waiver request on a case-by-case basis.

The Department has reviewed your request and denies the request because it fails to satisfy the first factor of the public interest analysis. As stated above, the first factor of the public interest analysis requires the subject matter of the requested records must specifically concern an identifiable operation or activity of the government. In order to satisfy this element, the requester must identify a nexus between the requested records and the benefit to the public. See Nat'l Treasury Employees Union v. Griffin, 811 F.2d 644 (D.C. Cir. 1987). Moreover, the requester must satisfy this burden with a level of specificity, beyond generalized statements that the request somehow relates to a government operation or activity. Judicial Watch v. U.S. Dep't of Justice, 122 F.Supp.2d 5, 9 (D. D.C. 2000); see Larson v. C.I.A., 843 F.2d 1481, 1483 (D.C. Cir. 1988).

In your request, you state, "these records are likely to contribute to the public's understanding of an educational product that is apparently being utilized by a quarter million public schools students in 19 states, the District of Columbia and Puerto Rico." As stated above, the Department has concluded that your request does not reasonably describe the records sought. Assuming for the sake of argument that your request did reasonably describe the records sought, you have not stated how the requested records relate to a specific government activity or operation. At most, you indicate that there are "at least thirteen school districts were reportedly paying for [the educational] Ignite! products with money received by the states under the No Child Left Behind Act of 2001." There are several Department programs that receive funds under the No Child Left Behind Act of 2001. Your request fails to identify a specific program under which a state might pay for educational products through funds made available pursuant to the No Child Left Behind Act of 2001. Without such information, your request is nothing more than a fishing expedition through government files.

In sum, the Department's denies your request for a fee waiver in the present case. Since you have failed to meet your burden regarding a fundamental threshold requirement of the legal standard for analyzing fee waiver requests under the FOIA, the Department cannot address the remaining factors of the fee waiver analysis. However, the Department may reconsider this decision should you choose to submit supplemental or clarifying information.

Fees are charged for searching/reviewing and duplication for responsive records. The fee is calculated in accordance with 5 U.S.C. § 552(a)(4)(A)(ii)(III), 5 U.S.C. § 552(a)(4)(A)(iv)(II) and 34 CFR § 5.61. The search and the review fee are calculated based on the hourly rate of pay, plus 16% administrative charge and the duplication costs are ten cents per photocopied page. Our regulations, 34 CFR § 5.61 require us to allow you to modify your request if the cost is more than $25.00. In addition, in accordance with 34 CFR § 5.62(a)(2), if the cost is to be greater than $250.00, the requester must pay in advance.

You have the right to appeal this decision by writing, within 30 days of your receipt of this letter. Your appeal should be received by the FOIA office on or before July 25, 2007. Your appeal should be accompanied by a copy of your initial letter of request and this denial letter, and should contain any evidence or argument you wish the Department to consider in making an administrative determination on your appeal.

Page 4 of 4 Citizens for Responsibility and Ethics in Washington
No. 07-00661-F

**Appeal Address:**

U.S. Department of Education
Chief Information Officer
400 Maryland Avenue, SW, FOB-6-2W311
ATTN: FOIA Appeals
Washington, DC 20202-4500

Once we receive your clarification and the issues regarding charges are resolved, we will begin
processing your request. Please send your clarification letter to the U.S. Department of Education,
ATTN: FOIA Office, 400 Maryland Avenue, SW, PCP 9th Floor, Washington, DC 20202-4700, or send it
by e-mail: EDFOIAManager@ed.gov.

If you have any questions regarding this letter, please contact Angela Arrington or myself at
202-245-6615.

Sincerely,

Maria-Teresa Cueva
FOIA Public Liaison, OM/RIMS

**EXHIBIT C**



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF MANAGEMENT

ASSISTANT SECRETARY

April 16, 2007

Mr. Daniel C. Roth
Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, NW, Suite 450
Washington, DC 20005

RE: FOIA Request No. 07-00517-F

Dear Mr. Roth:

This letter is in response to your fax dated March 28, 2007 requesting information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Your request was received in this office on March 29, 2007. You asked for the following information:

1. All communications from any Department office, including any and all field offices, to from or referencing any member of the White House staff, including, but not limited to, then-Domestic Policy Advisor Margaret Spellings, that mention or relate to Reading First, "Science Based Reading Research"/"SBRR," DIBELS or any other issue related to reading instruction or education.

2. All Department contacts or communications, including calendar references and meeting notes, with educational publishers, their executives, employees, consultants, or contractors. The List of educational publishers and/or their subsidiaries includes, but is not limited to, Houghton Mifflin, SRA McGraw Hill, Pearson Scott Foresman, Voyager, and Cambium Learning, Sopris West, and IntelliTools.

3. All Department contacts or communications that mention or relate to contacts with educational publishers, their executives, or employees. The list of educational publishers and/or their subsidiaries includes, but is not limited to, Houghton Mifflin, SRA McGraw Hill, Pearson Scott Foresman, Voyager, Cambium Learning, Sopris West, and IntelliTools.

4. To the extent not included in the above request, provide all documents previously disclosed under FOIA to Andrew Brownstein, Travis Hicks and/or the Title I Monitor. See Andrew Brownstein, Travis Hicks, Congress Grills Spellings on Reading First Program: OIG Investigation Draws to a Close, Title I Monitor (undated).

Enclosed is a CD containing 421 pages of documents responsive to item 4 of your request. The documents provided are: documents regarding the Reading First program that were previously disclosed under FOIA to the Title I Monitor.

Page 2 of 5 Citizens for Responsibility and Ethics in Washington
No. 07-00517-F

In an effort to process your request as expeditiously as possible, we need clarification for items 1 through 3 of your request. As you are aware, FOIA requests must reasonably describe the records that are sought in order for Department employees, with knowledge of the subject matter, to identify and locate potentially responsive documents. 5 U.S.C. § 552(a)(3)(A) (2000). Items 1 through 3 of your request encompass a large volume of information on broad topics related to individuals in the Department and "White House staff", without identifying specific individuals, offices, or subjects. In addition, your request does not specify any relevant time frames. Consequently, your request does not reasonably describe the records sought, and the Department is unable to process your request regarding items 1 through 3 without further clarification. See Dale v. Internal Revenue Service, 238 F.Supp.2d 99 (D.D.C. 2002).

Fee Waiver
In addition, you have requested a fee waiver for your request. The requester bears the burden of justifying entitlement to a fee waiver. See Casad v. Department of Health & Human Services, 2003 U.S. Dist. LEXIS 13007 (D. D.C. June 20, 2003). To meet this burden, a requester must satisfy two statutory requirements before the Department may waive or reduce properly assessed fees: (1) disclosure of the information must be in the public interest because the information primarily benefits the general public and is likely to contribute significantly to public understanding of the operations or activities of the government; and (2) disclosure of the information must not be primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii)(2000); see also 34 C.F.R. § 5.64(a). Moreover, a requester must address both factors in sufficient detail in order for an agency to determine whether it can reduce or waive the fees. Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309 (D.C. Cir. 2003).

In order to determine whether the disclosure of the information responsive to the request furthers the narrow public interest cognizable under the FOIA, the Department must consider the following four (4) factors in sequence:

1. The subject matter of the requested records themselves must specifically concern identifiable "operations or activities of the government";
2. In order for the disclosure to be "likely to contribute" to an understanding of specific government operations or activities, the disclosable portions of the requested information must be meaningfully informative in relation to the subject matter of the request;
3. The disclosure must contribute to the "understanding of the public at large," as opposed to that of the individual requester or a narrow segment of interested persons; and
4. The disclosure must "contribute significantly" to public understanding of government operations or activities.

See Judicial Watch, Inc. v. Department of Justice, No. 03-5093, 2004 WL 980826 (D.C. Cir. May 7, 2004); see also 34 C.F.R. § 5.64(b)(1) and (2). Only if all four elements have been met will the Department conclude that a requester has satisfied the first prong of the public interest element of the statutory requirement for a fee waiver.

Where the Department concludes that the public interest requirement has been met, it may waive or reduce applicable fees only where it also finds that "disclosure of the information . . . is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii)(2000). In order to determine whether this second requirement has been satisfied, the Department must consider the following two factors in sequence:

Page 3 of 5 Citizens for Responsibility and Ethics in Washington
No. 07-00517-F

1. Does the request involve any "commercial interest of the requester" (if not, the requester satisfies the second prong of the statutory fee waiver test); and

2. If so, the agency must balance the requester's commercial interest against the identified public interest in disclosure for the purpose of ascertaining which is the "primary interest"; a fee waiver or reduction may be granted only where the public interest in disclosure is greater in magnitude than the requester's commercial interest.

See also 34 C.F.R. § 5.64(b)(3).

For your information, the Department does not customarily grant blanket waivers, but rather considers each waiver request on a case-by-case basis.

The Department has reviewed your request and denies the request because it fails to provide sufficient information to justify the Department's grant of a fee waiver. You state that, "[t]he subject of this request concerns the operations of the federal government, and the disclosure will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way." Although not entirely clear from the information provided, the Department assumes, for the sake of argument, that the responsive materials for items 1 through 3 of your request meet the first two elements of the public interest prong of the statutory requirement for a fee waiver because they presumably relate to the Department's administration of the Reading First program. However, it is clear that you have not satisfied the burden with regard to the third and fourth elements of the public interest prong of the statutory requirement.

As stated above, the third factor of the public interest analysis requires that the disclosure contribute to the "understanding of the public at large," as opposed to that of the individual requester or a narrow segment of interested persons. In order to satisfy this element of the public interest prong, the public must derive the benefit from the disclosure of this information, and not the personal benefit that may be derived from the requester, or a narrow segment of the population. Mells v. Internal Revenue Service, 2002 U.S. Dist. LEXIS 24275 (D.D.C. Nov. 21, 2002). In this regard, the identity of the requester will be considered so that an agency may determine whether the requester is in a position to contribute to the public understanding through the disclosure of the requested materials. Burriss v. CIA, 524 F. Supp. 448 (M.D. Tenn. 1981). As part of this analysis, the Department will consider whether the requester has the expertise in the subject area, and a demonstrated ability and intent to disseminate the information to the general public. Id. Additionally, while not for profit organizations are often capable of disseminating information, they do not automatically qualify for a waiver or reduction of fees because of their non-profit status. VoteHemp, Inc. v. DEA, 237 F. Supp. 2d 55 (D.D.C. 2002); see also McClain v. U.S. Dep't of Justice, 13 F.3d 220, 221 (7th Cir. 1993).

In your request you have indicated that "CREW will disseminate any documents it acquires from this request to the public .... [through] an interactive website where members of the public can analyze and comment on public documents[.] ... Currently, this site contains links to thousands of pages of documents CREW acquired from multiple FOIA requests." While this statement does demonstrate that you intend to disseminate the information, it does not demonstrate how the potentially responsive documents in this case will contribute to the "understanding of the public at large." Based upon your letter, it appears that members of the public would have to individually "analyze" the data to reach any possible understanding of the information. Consequently, you have failed to meet the third prong of the public interest analysis.

Page 4 of 5 Citizens for Responsibility and Ethics in Washington
No. 07-00517-F

The fourth element of the public interest prong of the statutory requirement for a fee waiver requires that the disclosure must "contribute significantly" to public understanding of government operations or activities. For this element, an agency is required to determine whether the disclosure of the information will make a significant contribution to the public's understanding of the operations or activities of government. D.C. Technical Assistance Org. v. Dep't of Housing & Urban Development, 85 F.Supp.2d 46, 49 (D.D.C. 2000). "Significance" is measured by a likely enhancement of the public's understanding of the subject at issue as a result of the disclosure, compared to the public's level of understanding of that same issue prior to disclosure. Id.; see also Judicial Watch v. U.S. Department of Justice, 185 F.Supp.2d 54, 62 (D.D.C. 2002).

In your letter, you stated "the disclosures [of the information] will likely contribute to a better understanding of relevant government procedures by ... the general public in a significant way", and specifically, refer to "the public's understanding of the extent of White House involvement in the administration of the Reading First program[.]" It is interesting to note that you refer to an article on the very issue that you contend is unclear. Accordingly, information regarding this issue already exists in the public domain. Consequently, you have failed to show how the disclosure of the requested information will significantly enhance the public's understanding of the Reading First program beyond the information that already exists in the public domain. Carney v. U.S. Dep't of Justice, 19 F.3d 807, 815 (2d Cir. 1994).

In sum, the Department's denies your request for a fee waiver in the present case.

Fees are charged for searching/reviewing and duplication for responsive records. The fee is calculated in accordance with 5 U.S.C. § 552(a)(4)(A)(ii)(III), 5 U.S.C. § 552(a)(4)(A)(iv)(II) and 34 CFR § 5.61. The search and the review fee are calculated based on the hourly rate of pay, plus 16% administrative charge and the duplication costs are ten cents per photocopied page. Our regulations, 34 CFR § 5.61 require us to allow you to modify your request if the cost is more than $25.00. In addition, in accordance with 34 CFR § 5.62(a)(2), if the cost is to be greater than $250.00, the requester must pay in advance.

You have the right to appeal this decision by writing, within 30 days of your receipt of this letter. Your appeal should be received by the FOIA office on or before
Mary 24, 2007. Your appeal should be accompanied by a copy of your initial letter of request and this denial letter, and should contain any evidence or argument you wish the Department to consider in making an administrative determination on your appeal.

**Appeal Address:**

U.S. Department of Education
Office of Management
400 Maryland Avenue, SW, FOB-6-2W311
ATTN: FOIA Appeals
Washington, DC 20202-4500

Page 5 of 5 Citizens for Responsibility and Ethics in Washington
No. 07-00517-F

Once we receive your clarification and the issues regarding charges are resolved, we will begin processing your request.  Please send your clarification letter to the U.S. Department of Education, ATTN: FOIA Office, 400 Maryland Avenue, SW, PCP 9th Floor, Washington, DC  20202-4700, or send it by e-mail: EDFOIAManager@ed.gov.

If you have any questions regarding this letter, please contact Angela Arrington or myself at 202-245-6615.

Sincerely,

Maria-Teresa Cueva
FOIA Public Liaison, OM/RIMS


Enclosures

**EXHIBIT D**

**Dan Roth**

---

**From:** Dan Roth
**Sent:** Monday, May 21, 2007 3:18 PM
**To:** 'EDFOIAManager@ed.gov'
**Subject:** 07-00517-F Proposed Narrowing Terms

Dear Ms. Arrington,

As we discussed on May 9 and May 14, CREW is seeking to aid the Department in its search for responsive records by narrowing the terms of our March 28, 2007 FOIA request, No. 07-00517-F. Though our request sufficiently describes the records we seek, you and others at the Department have advised us that technological limitations of the Department's email search technology would require the Department to search approximately 4,500 email accounts unless the request is narrowed further. Accordingly, we suggest the following narrowed terms for the search in response to Request No. 07-00517-F:

Any and all documents and records from January 20, 2001, to the present, in the offices of: 1) The Secretary, 2) Senior Counselor, 3) Chief of Staff, 4) Deputy Secretary, 5) Management Improvement Team, 6) Elementary and Secondary Education, 7) Institute of Education Sciences, 8) Planning Evaluation and Policy Development, 9) Civil Rights, 10) Innovation and Improvement, 11) Special Education and Rehabilitative Services, 12) Management, 13) Chief Financial Officer and 14) Communications and Outreach, in the following categories:

1. All communications of the above-listed offices to, from, or referencing any member of the White House staff, including, but not limited to, then-Domestic Policy Advisor Margaret Spellings or Margaret LaMontagne, that mention or relate to Reading First, Early Reading First, "Scientifically Based Reading Research"/"Science Based Reading Research"/"SBRR" or DIBELS.

2. All communications of the above-listed offices, including calendar references and meeting notes, with the executives, employees, consultants, or contractors of the following educational publishers: Houghton Mifflin (including, but not limited to, Maureen DiMarco), SRA/McGraw Hill, Pearson Scott Foresman, Voyager (including, but not limited to, Randy Best), Cambium Learning, Sopris West, and Intellitools.

3. All communications of the above-listed offices, including calendar references and meeting notes, that mention or relate to contacts with the executives, employees, consultants, or contractors of the following educational publishers: Houghton Mifflin (including, but not limited to, Maureen DiMarco), SRA/McGraw Hill, Pearson Scott Foresman, Voyager (including, but not limited, to Randy Best), Cambium Learning, Sopris West, and Intellitools.

Apart from Item 4 of CREW's original request, to which the Department has already responded in the form of a CD containing documents previously disclosed to the *Title I Monitor* and received by CREW on April 23, 2007, all other language in CREW's original request (pages 2-4) remains unchanged. We also note that it is not only emails, but "all communications," that CREW requested.

Thank you for your time and attention to this matter.

Dan Roth
Counsel
CREW - Citizens for Responsibility and Ethics in Washington
www.citizensforethics.org
202-408-5565 ext. 109

---------------------------------------------------------------------------------------------------------------------------------------
---------------------------------------------------------------------
This email and any attachments are for the sole use of the intended recipients and may be privileged or confidential. Any distribution, printing, or other use by anyone else is prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete this email and attachments. Thank you.

**EXHIBIT E**



May 16, 2007

Brenda Dolan
Departmental Freedom of Information Officer
Office of Management and Organization
U.S. Department of Commerce
1401 Constitution Avenue N.W.
Washington, D.C. 20230

**By Fax, (202) 219-8979, and First Class mail**

**Re: Freedom of Information Act Request**

Dear Ms. Dolan,

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, pursuant to the Freedom of Information Act ("FOIA") and Department of Commerce ("Department") regulations, 15 C.F.R. §§ 4.1 et. seq.

Specifically, CREW seeks any records dating from January 20, 2001, through the present, related to or referencing in any way Ignite! Learning, a/k/a Ignite! or Curriculum on Wheels, a/k/a COWS. Included in this request are records of or relating to any contact that any office of the Department of Commerce, including any and all field offices, may have had with any officer or employee of Ignite! Learning, a/k/a Ignite!, including, but not limited to:

    (1) Neil Bush,
    (2) Barbara Bush,
    (3) Ken Leonard,
    (4) Lori Anderson,
    (5) Ashleigh Snyder and
    (6) Sid Rogich.

Please search responsive records regardless of format, medium or physical characteristics. Where possible, please produce records electronically in PDF or TIF format on a CD-ROM. We seek records of any kind, including electronic records, audiotapes, videotapes and photographs. Our request includes any telephone messages, voice mail messages, daily agenda and calendars,

information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions and transcripts or notes of any such meetings and/or discussions.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide an index of those documents as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972). As you are aware, a Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the Vaughn index must "describe each document or portion thereof withheld, and for **each** withholding it must discuss the consequences of supplying the sought-after information." King v. U.S. Dep't of Justice, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" Id. at 224 (citing Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. See 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. Mead Data Central, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a Vaughn index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

**<u>Fee Waiver Request</u>**

In accordance with 5 U.S.C. § 552(a)(4)(A)(iii) and 15 C.F.R. § 4.11 (k), CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government programs and procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. § 552(a)(4)(A)(iii). See, e.g., McClellan Ecological v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987).

2

Specifically, these records are likely to contribute to the public's understanding of an educational product that apparently is being or has been utilized by a quarter million public school students in 19 states, the District of Columbia and Puerto Rico. Press Release, Ignite! Learning, Ignite! Learning Surpasses Milestone Reaching More Than 250,000 Students (Jan. 22, 2007) (attached as Exhibit A). As of October 2006, at least thirteen school districts were reportedly paying for Ignite! products with money received by the states under the No Child Left Behind Act of 2001. See Walter F. Roche, Jr., Bush's Family Profits from 'No Child' Act, LA Times, Oct. 22, 2006 (attached as Exhibit B).

CREW is a non-profit corporation organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memoranda, reports or press releases. See, e.g. Hurricane Katrina International Relief; State Department documents reveal difficult coordination with other federal agencies, Citizens for Responsibility and Ethics in Washington (July 5, 2006), available at http://www.citizensforethics.org/files//DOSDocumentSummary.pdf. In addition, CREW will disseminate any documents it acquires from this request to the public. CREW has established an interactive website where members of the public can analyze and comment on public documents, including documents CREW acquires through the FOIA. See http://foia.citizensforethics.org/home. Currently, this site contains links to thousands of pages of documents CREW acquired from multiple FOIA requests. CREW's main website, www.citizensforethics.org, also includes documents relating to CREW's FOIA litigation, Internal Revenue complaints and Federal Election Commission complaints. As CREW's websites demonstrate, CREW has an established history of acquiring documents through the FOIA and publishing them on its website for public use.

Under these circumstances, CREW fully satisfies the criteria for a fee waiver.

## Conclusion

Please respond to this request in writing within 20 days as required under 5 U.S.C. § 552(a)(6)(A)(I). If all of the requested documents are not available within that time period, CREW requests that you provide all requested documents or portions of documents which are available within that time period.

If you have any questions about this request or foresee any problems in releasing fully the requested records within the twenty-day period, please contact me at (202) 408-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon

3

making such determination.  Please send the requested documents to Daniel C. Roth, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C. 20005.

Sincerely,

Daniel C. Roth
Counsel
Citizens for Responsibility and Ethics in Washington

Enclosures

**EXHIBIT A**



*For Immediate Release*

Contact:
Scott Campbell
Phillips and Company
(512) 423-4907
dscampbell@phillipscompany.com

### Ignite! Learning Surpasses Milestone Reaching More Than 250,000 Students

*Innovative curriculum solution serves more than 10,000 science and social studies classrooms*

AUSTIN, Texas – January 22, 2007 – Ignite! Learning, an educational curriculum publishing company, today announced that the Curriculum On Wheels (COW) now reaches more than 250,000 students in more than 10,000 science and social studies classrooms across the United States, making the COW one of the nation's fastest growing curriculum solutions being adopted by teachers today.

The Curriculum On Wheels is aligned to state standards and provides a comprehensive curriculum for middle school and upper elementary instruction. Teachers use the COW to enhance classroom education with pre-developed science and social studies lessons that augment students' learning and retention.

The Science or Social Studies COW comes preloaded with a complete academic year of daily use curriculum covering all middle school grades, including lesson plans, classroom and student activities, unit tests as well as media to engage students resulting in active learning. Each lesson leverages two to three media pieces that comprise animation, video, images, text and music to reinforce key material while fostering critical thinking through the lesson plans and activities.

The COW is a turnkey solution; teachers simply plug it in and it works. In addition to curricula, the portable unit contains a built-in computer, projector and speakers that help teachers instruct more effectively without the trouble associated with cumbersome technology-related products.

Ignite! Learning has placed 2,000 COWs in 19 states, the District of Columbia and Puerto Rico. Each COW serves an average of 125 students per semester. Ignite! expects to triple its sales for each of the next three to five years, dramatically increasing the number of teachers and students who will benefit from the easy-to-use, results-oriented curricula.

Ignite! Learning President Ken Leonard said, "We spend most of our time listening – listening to teachers and school districts to better understand what they need to help them succeed in their efforts to enhance classroom

instruction. We have designed the COW around the way teachers want to teach and that has made all the difference."

Moreover, pass rates for standardized testing in some school districts using the COWs have increased 20 to 40 percent. For example, after the Science COW was used for one semester at Burnet Elementary in the Midland (Texas) Independent School District, the test scores for Burnet's economically disadvantaged population increased from a 67 percent passing rate in 2005 to 87 percent in 2006. According to Burnet Principal Kellie Ebenstein, those increases are 29 percent higher than similar students in the region based on the Accountability Data Tables from The Texas Education Agency.

"Reaching the 250,000 student milestone is significant for us; however, what inspires us most is how regular use of the COW translates into academic improvement gains in classrooms in 19 states. The COW motivates teachers and students to learn, and the improved test scores that result provide school communities with measurable evidence of our positive impact" said Leonard. "We know we're making a real difference in teachers and students' lives each and every day."

**About Ignite Learning**

Ignite! is committed to helping teachers by creating classroom solutions that are comprehensive, motivational, and easy to use. The company's curriculum is rooted in current research on best practices for middle and upper elementary schools. School districts and public and private schools in more than 19 states as well as the District of Columbia and Puerto Rico have adopted the Ignite! Curriculum On Wheels to help improve student performance in science and social studies. Ignite! plans to release a comprehensive mathematics curriculum in 2007. For more information on Ignite! Learning, visit www.ignitelearning.com.

Ignite! ™, Curriculum on Wheels™, COW™ and the Ignite! Learning logo are trademarks of Ignite! Inc. All other trademarks herein are properties of their respective owners. All rights reserved.

**EXHIBIT B**

## THE NATION

*BUSH'S FAMILY PROFITS FROM `NO CHILD' ACT*
*[HOME EDITION]*

Los Angeles Times - Los Angeles, Calif.

| | |
|---|---|
| Author: | Walter F. Roche Jr. |
| Date: | Oct 22, 2006 |
| Section: | Main News; Part A; National Desk |
| Document Types: | News |
| Text Word Count: | 1887 |

**Document Text**

*(Copyright (c) 2006 Los Angeles Times)*

A company headed by President Bush's brother and partly owned by his parents is benefiting from Republican connections and federal dollars targeted for economically disadvantaged students under the No Child Left Behind Act.

With investments from his parents, George H.W. and Barbara Bush, and other backers, Neil Bush's company, Ignite! Learning, has placed its products in 40 U.S. school districts and now plans to market internationally.

At least 13 U.S. school districts have used federal funds available through the president's signature education reform, the No Child Left Behind Act of 2001, to buy Ignite's portable learning centers at $3,800 apiece.

The law provides federal funds to help school districts better serve disadvantaged students and improve their performance, especially in reading and math.

But Ignite does not offer reading instruction, and its math program will not be available until next year.

The federal Department of Education does not monitor individual school district expenditures under the No Child program, but sets guidelines that the states are expected to enforce, spokesman Chad Colby said.

Ignite executive Tom Deliganis said that "some districts seem to feel OK" about using No Child money for the Ignite purchases, "and others do not."

Neil Bush said in an e-mail to The Times that Ignite's program had demonstrated success in improving the test scores of economically disadvantaged children. He also said political influence had not played a role in Ignite's rapid growth.

"As our business matures in the USA we have plans to expand overseas and to work with many distinguished individuals in Asia, Europe, the Middle East and Africa," he wrote. "Not one of these associates by the way has ever asked for any access to either of my political brothers, not one White House tour, not one autographed photo, and not one Lincoln bedroom overnight stay."

Funding laws unclear

Interviews and a review of school district documents obtained under the Freedom of Information Act found that educators and legal experts were sharply divided over whether Ignite's products were worth their cost or qualified under the No Child law.

The federal law requires schools to show they are meeting educational standards, or risk losing critical funding. If students fail to meet annual performance goals in reading and math tests, schools must supplement their educational offerings with tutoring and other special programs.

Leigh Manasevit, a Washington attorney who specializes in federal education funding, said that districts using the No Child funds to buy products like Ignite's would have to meet "very strict" student eligibility requirements and ensure that the Ignite services were supplemental to existing programs.

Known as COW, for Curriculum on Wheels (the portable learning centers resemble cows on wheels), Ignite's product line is geared toward middle school social studies, history and science. The company says it has developed a social studies program that meets curriculum requirements in seven states. Its science program meets requirements in six states.

Most of Ignite's business has been obtained through sole-source contracts without competitive bidding. Neil Bush has been directly involved in marketing the product.

In addition to federal or state funds, foundations and corporations have helped buy Ignite products. The Washington Times Foundation, backed by the Rev. Sun Myung Moon, head of the South Korea-based Unification Church, has peppered classrooms throughout Virginia with Ignite's COWs under a $1-million grant.

Oil companies and Middle East interests with long political ties to the Bush family have made similar bequests. Aramco Services Co., an arm of the Saudi-owned oil company, has donated COWs to schools, as have Apache Corp., BP and Shell Oil Co.

Neil Bush said he is a businessman who does not attempt to exert political influence, and he called The Times' inquiries about his venture -- made just before the election -- "entirely political."

Big supporters

Bush's parents joined Neil as Ignite investors in 1999, according to U.S. Securities and Exchange Commission documents. By 2003, the records show, Neil Bush had raised about $23 million from more than a dozen outside investors, including Mohammed Al Saddah, the head of a Kuwaiti company, and Winston Wong, the head of a Chinese computer firm.

Most recently he signed up Russian fugitive business tycoon Boris A. Berezovsky and Berezovsky's partner Badri Patarkatsishvili.

Barbara Bush has enthusiastically supported Ignite. In January 2004, she and Neil Bush were guests of honor at a $1,000-atable fundraiser in Oklahoma City organized by a foundation supporting the Western Heights School District. Proceeds were earmarked for the purchase of Ignite products.

Organizer Mary Blankenship Pointer said she planned the event because district students were "utilizing Ignite courseware and experiencing great results. Our students were thriving."

However, Western Heights school Supt. Joe Kitchens said the district eventually dropped its use of Ignite because it disagreed with changes Ignite had made in its products. "Our interest waned in it," he said.

The former first lady spurred controversy recently when she contributed to a Hurricane Katrina relief foundation for storm victims who had relocated to Texas. Her donation carried one stipulation: It had to be used by local schools for purchases of COWs.

Texas accounts for 75% of Ignite's business, which is expanding rapidly in other states, Deliganis said.

The company also has COWs deployed in North Carolina, Virginia, Nevada, California, the District of Columbia, Georgia and Florida, he said.

COWs recently showed up at Hill Classical Middle School in California's Long Beach Unified School District. A San Jose middle school also bought Ignite's products but has since closed.

Neil Bush said Ignite has more than 1,700 COWs in classrooms.

Shift in strategy

But Ignite's educational strategy has changed dramatically, and some are critical of its new approach. Shortly after Ignite was formed in Austin, Texas, in 1999, it bought the software developed by another small Austin firm, Adaptive Learning Technology.

Adaptive Learning founder Mary Schenck-Ross said the software's interactive lessons allowed teachers "to get away from the mass- treatment approach" to education. When a student typed in a response to a question, the software was designed to react and provide a customized learning path.

"The original concept was to avoid 'one size fits all.' That was the point," said Catherine Malloy, who worked on the software development.

Two years ago, however, Ignite dropped the individualized learning approach. Working with artists and illustrators, it created a large purple COW that could be wheeled from classroom to classroom and plugged in, offering lessons that could be played to a roomful of students.

The COWs enticed students with catchy jingles and videos featuring cartoon characters like Mr. Bighead and Norman Einstein. On Ignite's website, a collection of teachers endorsed the COW, saying that it eliminated the need for lesson planning. The COW does it for them.

The developers of Adaptive Learning's software complain that Ignite replaced individualized instruction with a gimmick.

"It breaks my heart what they have done. The concept was totally perverted," Schenck-Ross said.

Nevertheless, Ignite found many receptive school districts. In Texas, 30 districts use COWs.

In Houston, where Neil Bush and his parents live, the district has used various funding sources to acquire $400,000 in Ignite products. An additional $240,000 in purchases has been authorized in the last six months.

Correspondence obtained by The Times shows that Neil Bush met with top Houston officials, sent e-mails and left voice mail messages urging bigger and faster allocations. An e-mail from a school procurement official to colleagues said Bush had made it clear that he had a "good working relationship" with a school board member.

Another Ignite official asked a Texas state education official to endorse the company. In an e-mail, Neil Bush's partner Ken Leonard asked Michelle Ungurait, state director of social studies programs, to tell Houston officials her "positive impressions of our content, system and approach."

Ungurait, identified in another Leonard e-mail as "our good friend" at the state office, told her superiors in response to The Times' inquiry that she never acted on Leonard's request.

Leonard said he did not ask Ungurait to do anything that would be improper.

Houston school officials gave Ignite's products "high" ratings in eight categories and recommended approval.

Some in Houston's schools question the expenditures, however. Jon Dansby was teaching at Houston's Fleming Middle School when Ignite products arrived.

"You can't even get basics like paper and scissors, and we went out and bought them. I just see red," he said.

In Las Vegas, the schools have approved more than $300,000 in Ignite purchases. Records show the board recommended spending $150,000 in No Child funding on Ignite products.

Sources familiar with the Las Vegas purchases said pressure to buy Ignite products came from Sig Rogich, an influential local figure and prominent Republican whose fundraising of more than $200,000 for President Bush's 2004 reelection campaign qualified him as a "Bush Ranger."

Rogich, who chairs a foundation that supports local schools, said he applied no pressure but became interested in COWs after Neil Bush contacted him. Rogich donated $6,000 to purchase two COWs for a middle school named after him.

Christy Falba, the former Clark County school official who oversaw the contracts, said she and her husband attended a dinner with Neil Bush to discuss the products. She said Rogich encouraged the district "to look at the Ignite program" but applied no pressure.

Mixed reviews

Few independent studies have been done to assess the effectiveness of Ignite's teaching strategies. Neil Bush said the company had gotten "great feedback" from educators and planned to conduct a "major scientifically valid study" to assess the COW's impact. The results should be in by next summer, he said.

Though Ignite's products get generally rave reviews from Texas educators, the opinion is not universal.

The Tornillo, Texas, Independent School District no longer uses the Ignite programs it purchased several years ago for $43,000.

"I wouldn't advise anyone else to use it," said Supt. Paul Vranish. "Nobody wanted to use it, and the principal who bought it is no longer here."

Ignite's website features glowing videotaped testimonials from teachers, administrators, students and parents.

Many of the videos were shot at Del Valle Junior High School near Austin, where school district officials allowed Ignite to film facilities and students.

In the video, a student named India says: "I was feeling bad about my grades. I didn't know what my teacher was talking about." The COW changed everything, the girl's father says on the video.

Lori, a woman identified as India's teacher, says the child was not paying attention until the COW was brought in.

The woman, however, is not India's teacher, but Lori Anderson, a former teacher and now Ignite's marketing director. Ignite says Anderson was simply role-playing.

In return for use of its students and facilities, a district spokeswoman said Ignite donated a free COW. Five others were purchased with district funds.

District spokeswoman Celina Bley acknowledged that regulations bar school officials from endorsing products. But she said that restriction did not apply to the videos.

"It is illegal for individuals to make an endorsement, but this was a districtwide endorsement," Bley said in an e-mail.

wally.roche@latimes.com

[Illustration]
Caption: PHOTO: 'CURRICULUM ON WHEELS': Christopher Miller of Ignite! Learning busies himself at the company's booth at a Florida science teachers' conference in Gainesville.; PHOTOGRAPHER: Oscar Sosa For The Times; PHOTO: NEIL BUSH: He says Ignite's growth is not due to political influence.; PHOTOGRAPHER: David Kohl Associated Press

Credit: Times Staff Writer

Reproduced with permission of the copyright owner. Further reproduction or distribution is prohibited without permission.

**EXHIBIT 4**

# CREW | citizens for responsibility and ethics in washington

July 9, 2007

U.S. Department of Education
Chief Information Officer
400 Maryland Avenue, S.W.
FOB-6-2W311
ATTN: FOIA Appeals
Washington, D.C. 20202-4500

**By fax (202) 245-6623 and first class and electronic mail**

**Re: FOIA Request No. 07-00661-F**

Dear Sir/Madam:

On May 16, 2007, Citizens for Responsibility and Ethics in Washington ("CREW") sent a Freedom of Information Act ("FOIA") request to the Department of Education ("Education") seeking documents relating to contacts with specified individuals, products or entities associated with Ignite! Learning (attached as Exhibit A). Specifically, CREW requested records from three identified offices as well as any office with staff members whose duties include implementing the No Child Left Behind Act of 2001 regarding or reflecting contacts with: (1) Ignite! Learning, a/k/a Ignite!, or any officer or employee thereof; (2) Curriculum on Wheels, a/k/a/ COWs; (3) Neil Bush; (4) Barbara Bush; (5) Ken Leonard; (6) Lori Anderson; (7) Ashleigh Snyder; and (8) Sid Rogich. Id. CREW also requested a waiver of fees associated with the processing of its request. Id.

By letter dated June 20, 2007, Education denied CREW's request for a fee waiver.[1] Letter from Maria-Teresa Cueva, U.S. Department of Education, to Daniel C. Roth, CREW (June 20, 2007) (attached as Exhibit B). CREW hereby appeals the denial of its fee waiver request and respectfully requests that you reverse it for the reasons set forth below.

## Erroneous Standard Applied

Education denied CREW's fee waiver request based on Education's conclusion that CREW had failed to demonstrate how the requested records relate to a specific government activity or operation as the FOIA requires, 5 U.S.C. § 552(c)(4)(A)(iii). According to Education, CREW's request is deficient because it "fails to identify a specific program under the state might pay for educational products through funds made available pursuant to the No Child Left Behind Act of 2001." Exhibit B.

---

[1] Education's June 20 letter also stated that CREW's request could not be processed as drafted. As instructed, CREW responded separately to that issue by letter dated July 3, 2007.

In reaching this conclusion, Education applied an erroneous standard that requires CREW to go beyond describing how records relate to operations or activities of the government by specifying how they relate to a particular government program. No applicable statute or regulation sets the public interest fee waiver at this level of specificity. As the FOIA clearly states, fees shall be waived or reduced:

> if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the **operations or activities of the government** and is not primarily in the commercial interest of the requester.

5 U.S.C. § 552(a)(4)(A)(iii) (emphasis added). Education's own fee waiver regulations include identical language, allowing the Secretary to waive fees if the request is:

> In the public interest because furnishing the information can be considered as primarily benefitting the general public and is likely to contribute significantly to public understanding of the **operations or activities of the government**.

34 C.F.R. § 5.64 (a)(1) (emphasis added). Among the secondary factors to be considered in making a fee waiver decision is "[w]hether the subject of the requested records concerns the **operations or activities of the government**." 34 C.F.R. § 5.64 (b)(1). As a court found just last year, CREW satisfies the criteria for a public interest fee waiver where, *inter alia*, it is able to explain "with reasonable specificity how [the documents sought] would increase public knowledge of the **functions of government**." CREW v. Dep't of Health and Human Services, No. 05-1127, 2006 U.S. Dist LEXIS 95700, at *22 (D.D.C. Sept. 8, 2006) (emphasis added).

Accordingly, there is no support for Education's newly minted requirement that CREW identify a "specific program" in order to meet the public interest fee waiver test.

Nevertheless, the attached documents demonstrate precisely the specific program to which CREW's requested documents relate: NCLB Title I program funds are being expended on COWs. Midland, Texas's San Jacinto Junior High School lists $27,000 of Title I expenditures on COWs in its 2006-2007 Campus Improvement Plan (*available via link at* http://www.midlandisd.net/campus/SJ/campusinformation.html; pages 1, 21, 25, and 56 attached as Exhibit C).

### Further Justification for Reversal of Education's Fee Waiver Denial

The records CREW seeks unambiguously involve the operations and activities of the federal government with respect to Ignite! Learning, an educational product company founded and headed by Neil Bush, President George W. Bush's brother. See Walter F. Roche, Jr., Bush's Family Profits from 'No Child' Act, L.A. Times, Oct. 12, 2006 (Exhibit B to Exhibit A). Ignite! produces a $3,800 product called the Curriculum on Wheels, or COW, that consists of a video projector and computer hard drive loaded with Ignite! educational software. Id. CREW's

request for a fee waiver, pointed out that No Child Left Behind ("NCLB") funds are reportedly being used to purchase Ignite! products. See Exhibit A. We also noted that over a quarter million public school students are reportedly using the product around the country. Id. These facts alone – neither of which is contested by Education – provide grounds on which to grant CREW's request for a fee waiver.

Furthermore, Exhibit B to CREW's FOIA request contains a litany of additional examples as to why this FOIA request merits a fee waiver. As mentioned above, President Bush's brother, Neil Bush, is the founder and CEO of Ignite!. Roche, L.A. Times, Oct. 12, 2006. In addition to reporting that at least 13 school districts have bought COWs with NCLB funds, the article specifically notes that a Las Vegas school board recommended that $150,000 of NCLB funds be used to purchase COWs. Id. Sig Rogich, one of the individuals included in CREW's FOIA request and a major fund-raiser for President Bush, was said to have influenced that decision. Id.

The article also notes that "legal experts [are] sharply divided over whether Ignite's products were worth their cost or qualified under the No Child law" and that "[m]ost of Ignite's business has been obtained through sole-source contracts without competitive bidding." Id. When the president's brother's business is getting hundreds of thousands of dollars in federal money, amid reports that presidential fund-raisers are putting pressure on school districts to use their NCLB funds in this manner, the public interest is surely served by learning more about contacts between the company and the federal agency charged with distributing billions of taxpayer dollars.

## Conclusion

The documents CREW seeks pertain to a product being sold by Neil Bush around the country for use by hundreds of thousands of public school students. Reports indicate that hundreds of thousands of dollars for which Education is responsible are being spent on this product, some under sole-source contracts, despite debate over whether the product even qualifies for such federal funding. Roche, L.A. Times, Oct. 12, 2006. Under these circumstances, the public has a strong interest in knowing, for example, whether the Department has performed any oversight over the distribution of federal funds, and what other contacts the Department has had with respect to Ignite!.

The documents CREW has requested will amplify the information that already exists in the public domain about the use of federal funds for Ignite! products. Disclosure of the information CREW seeks will contribute significantly to the public's understanding of the Department's role with respect to oversight or other involvement with distribution of Title I and other NCLB funds on Ignite! products.

Under these circumstances, CREW satisfies fully the criteria for a fee waiver. Accordingly, we request that you reverse the Department's determination to deny CREW a fee wavier.

Sincerely

Daniel C. Roth
Counsel
Citizens for Responsibility and
    Ethics in Washington
(202) 408-5565
droth@citizensforethics.org

Enclosures

# EXHIBIT A

# CREW | citizens for responsibility and ethics in washington

May 16, 2007

Office of Management
Regulatory Information Management Services
U.S. Department of Education
400 Maryland Avenue, SW, PCP 9143
Washington, DC 20202-4700

**By Fax, (202) 245-6623, and First Class mail**

**Re: Freedom of Information Act Request**

Dear Sir/Madam:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, pursuant to the Freedom of Information Act ("FOIA") and Department of Education ("Department") regulations, 34 C.F.R. §§ 5.6 et. seq.

Specifically, CREW seeks any records dating from January 20, 2001, through the present, from the following Department of Education offices:

(1) Office of the Secretary, including the offices of the Chief of Staff and Senior
Counselor,
(2) Office of the Deputy Secretary,
(3) Office of Elementary and Secondary Education
(4) any other office in which there are staff members whose duties include
implementation of the No Child Left Behind Act of 2001,

of or relating to any contact with the following individuals or entities:

(1) Ignite! Learning a/k/a Ignite!, or any officer or employee thereof,
(2) Curriculum on Wheels a/k/a COWs,
(3) Neil Bush,
(4) Barbara Bush,
(5) Ken Leonard,
(6) Lori Anderson,
(7) Ashleigh Snyder and
(8) Sid Rogich.

Please search responsive records regardless of format, medium or physical characteristics. Where possible, please produce records electronically in PDF or TIF format on a CD-ROM. We seek records of any kind, including electronic records, audiotapes, videotapes and photographs. Our request includes any telephone messages, voice mail messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions and transcripts or notes of any such meetings and/or discussions.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide an index of those documents as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972). As you are aware, a Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979). Moreover, the Vaughn index must "describe each document or portion thereof withheld, and for **each** withholding it must discuss the consequences of supplying the sought-after information." King v. U.S. Dep't of Justice, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" Id. at 224 (citing Mead Data Central v. U.S. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. See 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. Mead Data Central, 566 F.2d at 261. Claims of nonsegregability must be made with the same degree of detail as required for claims of exemptions in a Vaughn index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

## **Fee Waiver Request**

In accordance with 5 U.SC. § 552(a)(4)(A)(iii) and 34 C.F.R. § 5.64, CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures will likely contribute to a better understanding of relevant government programs and procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-

2

commercial purposes. 5 U.S.C. § 552(a)(4)(A)(iii). See, e.g., McClellan Ecological v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987).

Specifically, these records are likely to contribute to the public's understanding of an educational product that apparently is being or has been utilized by a quarter million public school students in 19 states, the District of Columbia and Puerto Rico. Press Release, Ignite! Learning, Ignite! Learning Surpasses Milestone Reaching More Than 250,000 Students (Jan. 22, 2007) (attached as Exhibit A). As of October 2006, at least thirteen school districts were reportedly paying for Ignite! products with money received by the states under the No Child Left Behind Act of 2001. See Walter F. Roche, Jr., Bush's Family Profits from 'No Child' Act, LA Times, Oct. 22, 2006 (attached as Exhibit B).

CREW is a non-profit corporation organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to the protection of the citizen's right to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. CREW uses a combination of research, litigation, and advocacy to advance its mission. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memoranda, reports or press releases. See, e.g. Hurricane Katrina International Relief; State Department documents reveal difficult coordination with other federal agencies, Citizens for Responsibility and Ethics in Washington (July 5, 2006), available at http://www.citizensforethics.org/files//DOSDocumentSummary.pdf. In addition, CREW will disseminate any documents it acquires from this request to the public. CREW has established an interactive website where members of the public can analyze and comment on public documents, including documents CREW acquires through the FOIA. See http://foia.citizensforethics.org/home. Currently, this site contains links to thousands of pages of documents CREW acquired from multiple FOIA requests. CREW's main website, www.citizensforethics.org, also includes documents relating to CREW's FOIA litigation, Internal Revenue complaints and Federal Election Commission complaints. As CREW's websites demonstrate, CREW has an established history of acquiring documents through the FOIA and publishing them on its website for public use.

Under these circumstances, CREW fully satisfies the criteria for a fee waiver.

## Conclusion

Please respond to this request in writing within 20 days as required under 5 U.S.C. § 552(a)(6)(A)(I). If all of the requested documents are not available within that time period, CREW requests that you provide all requested documents or portions of documents which are available within that time period.

If you have any questions about this request or foresee any problems in releasing fully the requested records within the twenty-day period, please contact me at (202) 408-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact our office immediately upon making such determination. Please send the requested documents to Daniel C. Roth, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C. 20005.

Sincerely,

Daniel C. Roth
Counsel
Citizens for Responsibility and Ethics in Washington

Enclosures

**EXHIBIT A**



*For Immediate Release*

Contact:
Scott Campbell
Phillips and Company
(512) 423-4907
dscampbell@phillipscompany.com

## Ignite! Learning Surpasses Milestone Reaching More Than 250,000 Students

*Innovative curriculum solution serves more than 10,000 science and social studies classrooms*

AUSTIN, Texas – January 22, 2007 – Ignite! Learning, an educational curriculum publishing company, today announced that the Curriculum On Wheels (COW) now reaches more than 250,000 students in more than 10,000 science and social studies classrooms across the United States, making the COW one of the nation's fastest growing curriculum solutions being adopted by teachers today.

The Curriculum On Wheels is aligned to state standards and provides a comprehensive curriculum for middle school and upper elementary instruction. Teachers use the COW to enhance classroom education with pre-developed science and social studies lessons that augment students' learning and retention.

The Science or Social Studies COW comes preloaded with a complete academic year of daily use curriculum covering all middle school grades, including lesson plans, classroom and student activities, unit tests as well as media to engage students resulting in active learning. Each lesson leverages two to three media pieces that comprise animation, video, images, text and music to reinforce key material while fostering critical thinking through the lesson plans and activities.

The COW is a turnkey solution; teachers simply plug it in and it works. In addition to curricula, the portable unit contains a built-in computer, projector and speakers that help teachers instruct more effectively without the trouble associated with cumbersome technology-related products.

Ignite! Learning has placed 2,000 COWs in 19 states, the District of Columbia and Puerto Rico. Each COW serves an average of 125 students per semester. Ignite! expects to triple its sales for each of the next three to five years, dramatically increasing the number of teachers and students who will benefit from the easy-to-use, results-oriented curricula.

Ignite! Learning President Ken Leonard said, "We spend most of our time listening – listening to teachers and school districts to better understand what they need to help them succeed in their efforts to enhance classroom

instruction. We have designed the COW around the way teachers want to teach and that has made all the difference."

Moreover, pass rates for standardized testing in some school districts using the COWs have increased 20 to 40 percent. For example, after the Science COW was used for one semester at Burnet Elementary in the Midland (Texas) Independent School District, the test scores for Burnet's economically disadvantaged population increased from a 67 percent passing rate in 2005 to 87 percent in 2006. According to Burnet Principal Kellie Ebenstein, those increases are 29 percent higher than similar students in the region based on the Accountability Data Tables from The Texas Education Agency.

"Reaching the 250,000 student milestone is significant for us; however, what inspires us most is how regular use of the COW translates into academic improvement gains in classrooms in 19 states. The COW motivates teachers and students to learn, and the improved test scores that result provide school communities with measurable evidence of our positive impact" said Leonard. "We know we're making a real difference in teachers and students' lives each and every day."

## About Ignite Learning

Ignite! is committed to helping teachers by creating classroom solutions that are comprehensive, motivational, and easy to use. The company's curriculum is rooted in current research on best practices for middle and upper elementary schools. School districts and public and private schools in more than 19 states as well as the District of Columbia and Puerto Rico have adopted the Ignite! Curriculum On Wheels to help improve student performance in science and social studies. Ignite! plans to release a comprehensive mathematics curriculum in 2007. For more information on Ignite! Learning, visit www.ignitelearning.com.

Ignite! ™, Curriculum on Wheels™, COW™ and the Ignite! Learning logo are trademarks of Ignite! Inc. All other trademarks herein are properties of their respective owners. All rights reserved.

**EXHIBIT B**

## THE NATION

*BUSH'S FAMILY PROFITS FROM `NO CHILD' ACT*
*[HOME EDITION]*

Los Angeles Times - Los Angeles, Calif.
Author:            Walter F. Roche Jr.
Date:              Oct 22, 2006
Section:           Main News; Part A; National Desk
Document Types:    News
Text Word Count:   1887

**Document Text**

*(Copyright (c) 2006 Los Angeles Times)*

A company headed by President Bush's brother and partly owned by his parents is benefiting from Republican connections and federal dollars targeted for economically disadvantaged students under the No Child Left Behind Act.

With investments from his parents, George H.W. and Barbara Bush, and other backers, Neil Bush's company, Ignitel Learning, has placed its products in 40 U.S. school districts and now plans to market internationally.

At least 13 U.S. school districts have used federal funds available through the president's signature education reform, the No Child Left Behind Act of 2001, to buy Ignite's portable learning centers at $3,800 apiece.

The law provides federal funds to help school districts better serve disadvantaged students and improve their performance, especially in reading and math.

But Ignite does not offer reading instruction, and its math program will not be available until next year.

The federal Department of Education does not monitor individual school district expenditures under the No Child program, but sets guidelines that the states are expected to enforce, spokesman Chad Colby said.

Ignite executive Tom Deliganis said that "some districts seem to feel OK" about using No Child money for the Ignite purchases, "and others do not."

Neil Bush said in an e-mail to The Times that Ignite's program had demonstrated success in improving the test scores of economically disadvantaged children. He also said political influence had not played a role in Ignite's rapid growth.

"As our business matures in the USA we have plans to expand overseas and to work with many distinguished individuals in Asia, Europe, the Middle East and Africa," he wrote. "Not one of these associates by the way has ever asked for any access to either of my political brothers, not one White House tour, not one autographed photo, and not one Lincoln bedroom overnight stay."

Funding laws unclear

Interviews and a review of school district documents obtained under the Freedom of Information Act found that educators and legal experts were sharply divided over whether Ignite's products were worth their cost or qualified under the No Child law.

The federal law requires schools to show they are meeting educational standards, or risk losing critical funding. If students fail to meet annual performance goals in reading and math tests, schools must supplement their educational offerings with tutoring and other special programs.

Leigh Manasevit, a Washington attorney who specializes in federal education funding, said that districts using the No Child funds to buy products like Ignite's would have to meet "very strict" student eligibility requirements and ensure that the Ignite services were supplemental to existing programs.

Known as COW, for Curriculum on Wheels (the portable learning centers resemble cows on wheels), Ignite's product line is geared toward middle school social studies, history and science. The company says it has developed a social studies program that meets curriculum requirements in seven states. Its science program meets requirements in six states.

Most of Ignite's business has been obtained through sole-source contracts without competitive bidding. Neil Bush has been directly involved in marketing the product.

In addition to federal or state funds, foundations and corporations have helped buy Ignite products. The Washington Times Foundation, backed by the Rev. Sun Myung Moon, head of the South Korea-based Unification Church, has peppered classrooms throughout Virginia with Ignite's COWs under a $1-million grant.

Oil companies and Middle East interests with long political ties to the Bush family have made similar bequests. Aramco Services Co., an arm of the Saudi-owned oil company, has donated COWs to schools, as have Apache Corp., BP and Shell Oil Co.

Neil Bush said he is a businessman who does not attempt to exert political influence, and he called The Times' inquiries about his venture -- made just before the election -- "entirely political."

Big supporters

Bush's parents joined Neil as Ignite investors in 1999, according to U.S. Securities and Exchange Commission documents. By 2003, the records show, Neil Bush had raised about $23 million from more than a dozen outside investors, including Mohammed Al Saddah, the head of a Kuwaiti company, and Winston Wong, the head of a Chinese computer firm.

Most recently he signed up Russian fugitive business tycoon Boris A. Berezovsky and Berezovsky's partner Badri Patarkatsishvili.

Barbara Bush has enthusiastically supported Ignite. In January 2004, she and Neil Bush were guests of honor at a $1,000-atable fundraiser in Oklahoma City organized by a foundation supporting the Western Heights School District. Proceeds were earmarked for the purchase of Ignite products.

Organizer Mary Blankenship Pointer said she planned the event because district students were "utilizing Ignite courseware and experiencing great results. Our students were thriving."

However, Western Heights school Supt. Joe Kitchens said the district eventually dropped its use of Ignite because it disagreed with changes Ignite had made in its products. "Our interest waned in it," he said.

The former first lady spurred controversy recently when she contributed to a Hurricane Katrina relief foundation for storm victims who had relocated to Texas. Her donation carried one stipulation: It had to be used by local schools for purchases of COWs.

Texas accounts for 75% of Ignite's business, which is expanding rapidly in other states, Deliganis said.

The company also has COWs deployed in North Carolina, Virginia, Nevada, California, the District of Columbia, Georgia and Florida, he said.

COWs recently showed up at Hill Classical Middle School in California's Long Beach Unified School District. A San Jose middle school also bought Ignite's products but has since closed.

Neil Bush said Ignite has more than 1,700 COWs in classrooms.

Shift in strategy

But Ignite's educational strategy has changed dramatically, and some are critical of its new approach. Shortly after Ignite was formed in Austin, Texas, in 1999, it bought the software developed by another small Austin firm, Adaptive Learning Technology.

Adaptive Learning founder Mary Schenck-Ross said the software's interactive lessons allowed teachers "to get away from the mass- treatment approach" to education. When a student typed in a response to a question, the software was designed to react and provide a customized learning path.

"The original concept was to avoid 'one size fits all.' That was the point," said Catherine Malloy, who worked on the software development.

Two years ago, however, Ignite dropped the individualized learning approach. Working with artists and illustrators, it created a large purple COW that could be wheeled from classroom to classroom and plugged in, offering lessons that could be played to a roomful of students.

The COWs enticed students with catchy jingles and videos featuring cartoon characters like Mr. Bighead and Norman Einstein. On Ignite's website, a collection of teachers endorsed the COW, saying that it eliminated the need for lesson planning. The COW does it for them.

The developers of Adaptive Learning's software complain that Ignite replaced individualized instruction with a gimmick.

"It breaks my heart what they have done. The concept was totally perverted," Schenck-Ross said.

Nevertheless, Ignite found many receptive school districts. In Texas, 30 districts use COWs.

In Houston, where Neil Bush and his parents live, the district has used various funding sources to acquire $400,000 in Ignite products. An additional $240,000 in purchases has been authorized in the last six months.

Correspondence obtained by The Times shows that Neil Bush met with top Houston officials, sent e-mails and left voice mail messages urging bigger and faster allocations. An e-mail from a school procurement official to colleagues said Bush had made it clear that he had a "good working relationship" with a school board member.

Another Ignite official asked a Texas state education official to endorse the company. In an e-mail, Neil Bush's partner Ken Leonard asked Michelle Ungurait, state director of social studies programs, to tell Houston officials her "positive impressions of our content, system and approach."

Ungurait, identified in another Leonard e-mail as "our good friend" at the state office, told her superiors in response to The Times' inquiry that she never acted on Leonard's request.

Leonard said he did not ask Ungurait to do anything that would be improper.

Houston school officials gave Ignite's products "high" ratings in eight categories and recommended approval.

Some in Houston's schools question the expenditures, however. Jon Dansby was teaching at Houston's Fleming Middle School when Ignite products arrived.

"You can't even get basics like paper and scissors, and we went out and bought them. I just see red," he said.

In Las Vegas, the schools have approved more than $300,000 in Ignite purchases. Records show the board recommended spending $150,000 in No Child funding on Ignite products.

Sources familiar with the Las Vegas purchases said pressure to buy Ignite products came from Sig Rogich, an influential local figure and prominent Republican whose fundraising of more than $200,000 for President Bush's 2004 reelection campaign qualified him as a "Bush Ranger."

Rogich, who chairs a foundation that supports local schools, said he applied no pressure but became interested in COWs after Neil Bush contacted him. Rogich donated $6,000 to purchase two COWs for a middle school named after him.

Christy Falba, the former Clark County school official who oversaw the contracts, said she and her husband attended a dinner with Neil Bush to discuss the products. She said Rogich encouraged the district "to look at the Ignite program" but applied no pressure.

Mixed reviews

Few independent studies have been done to assess the effectiveness of Ignite's teaching strategies. Neil Bush said the company had gotten "great feedback" from educators and planned to conduct a "major scientifically valid study" to assess the COW's impact. The results should be in by next summer, he said.

Though Ignite's products get generally rave reviews from Texas educators, the opinion is not universal.

The Tomillo, Texas, Independent School District no longer uses the Ignite programs it purchased several years ago for $43,000.

"I wouldn't advise anyone else to use it," said Supt. Paul Vranish. "Nobody wanted to use it, and the principal who bought it is no longer here."

Ignite's website features glowing videotaped testimonials from teachers, administrators, students and parents.

Many of the videos were shot at Del Valle Junior High School near Austin, where school district officials allowed Ignite to film facilities and students.

In the video, a student named India says: "I was feeling bad about my grades. I didn't know what my teacher was talking about." The COW changed everything, the girl's father says on the video.

Lori, a woman identified as India's teacher, says the child was not paying attention until the COW was brought in.

The woman, however, is not India's teacher, but Lori Anderson, a former teacher and now Ignite's marketing director. Ignite says Anderson was simply role-playing.

In return for use of its students and facilities, a district spokeswoman said Ignite donated a free COW. Five others were purchased with district funds.

District spokeswoman Celina Bley acknowledged that regulations bar school officials from endorsing products. But she said that restriction did not apply to the videos.

"It is illegal for individuals to make an endorsement, but this was a districtwide endorsement," Bley said in an e-mail.

wally.roche@latimes.com

[Illustration]
Caption: PHOTO: 'CURRICULUM ON WHEELS': Christopher Miller of Ignite! Learning busies himself at the company's booth at a Florida science teachers' conference in Gainesville.; PHOTOGRAPHER: Oscar Sosa For The Times; PHOTO: NEIL BUSH: He says Ignite's growth is not due to political influence.; PHOTOGRAPHER: David Kohl Associated Press

Credit: Times Staff Writer

Reproduced with permission of the copyright owner. Further reproduction or distribution is prohibited without permission.

**EXHIBIT B**



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF MANAGEMENT

June 20, 2007

Mr. Daniel C. Roth
Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, NW, Suite 450
Washington, DC  20005

RE: FOIA Request No. 07-00661-F

Dear Mr. Roth:

This letter is in response to your fax dated May 16, 2007 requesting information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  Your request was received in this office on May 17, 2007. You asked for the following information:

> Any records dating from January 20, 2001, through the present, from the following Department of Education offices:

> 1.  Office of the Secretary, including the offices of the Chief of Staff and Senior Counselor,
> 2.  Office of the Deputy Secretary,
> 3.  Office of Elementary and Secondary Education,
> 4.  any other office in which there are staff members whose duties include implementation of the No Child Left Behind Act of 2001,

of or relating to any contact with the following individuals or entities:

> 3.  Ignite! Learning a/k/a Ignite!, or any officer or employee thereof,
> 4.  Curriculum on Wheels a/k/a COWs,
> 5.  Neil Bush,
> 6.  Barbara Bush,
> 7.  Ken Leonard,
> 8.  Lori Anderson,
> 9.  Ashleigh Snyder, and
> 10. Sid Rogich.

We are unable to process your request at this time.  As you are aware, FOIA requests must reasonably describe the records that are sought in order for Department employees, with knowledge of the subject matter, to identify and locate potentially responsive documents. 5 U.S.C. § 552(a)(3)(A) (2000).  Your request seeks access to "any records [of various Department offices] ... of or relating to any contact [with specifically named individuals or entities]."  Your request as stated does not describe the records sought with a reasonable amount of detail such that a Department employee would be able to locate potentially responsive documents with a reasonable amount of effort. See Dale v. Internal Revenue Service,

400 MARYLAND AVE., S.W., WASHINGTON, DC 20202-4500
www.ed.gov

Our mission is to ensure equal access to education and to promote educational excellence throughout the nation.

Page 2 of 4 Citizens for Responsibility and Ethics in Washington
No. 07-00661-F

238 F.Supp.2d 99 (D. D.C. 2002). Consequently, the Department is unable to process your request as it is currently stated.

**Fee Waiver**
In addition, you have requested a fee waiver for your request. The requester bears the burden of justifying entitlement to a fee waiver. See Casad v. Department of Health & Human Services, 2003 U.S. Dist. LEXIS 13007 (D. D.C. June 20, 2003). To meet this burden, a requester must satisfy two statutory requirements before the Department may waive or reduce properly assessed fees: (1) disclosure of the information must be in the public interest because the information primarily benefits the general public and is likely to contribute significantly to public understanding of the operations or activities of the government; and (2) disclosure of the information must not be primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii)(2000); see also 34 C.F.R. § 5.64(a). Moreover, a requester must address both factors in sufficient detail in order for an agency to determine whether it can reduce or waive the fees. Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309 (D.C. Cir. 2003).

In order to determine whether the disclosure of the information responsive to the request furthers the narrow public interest cognizable under the FOIA, the Department must consider the following four (4) factors in sequence:

5. The subject matter of the requested records themselves must specifically concern identifiable "operations or activities of the government";
6. In order for the disclosure to be "likely to contribute" to an understanding of specific government operations or activities, the disclosable portions of the requested information must be meaningfully informative in relation to the subject matter of the request;
7. The disclosure must contribute to the "understanding of the public at large," as opposed to that of the individual requester or a narrow segment of interested persons; and
8. The disclosure must "contribute significantly" to public understanding of government operations or activities.

See Judicial Watch, Inc. v. Department of Justice, No. 03-5093, 2004 WL 980826 (D.C. Cir. May 7, 2004); see also 34 C.F.R. § 5.64(b)(1) and (2). Only if all four elements have been met will the Department conclude that a requester has satisfied the first prong of the public interest element of the statutory requirement for a fee waiver.

Where the Department concludes that the public interest requirement has been met, it may waive or reduce applicable fees only where it also finds that "disclosure of the information . . . is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii)(2000). In order to determine whether this second requirement has been satisfied, the Department must consider the following two factors in sequence:

3. Does the request involve any "commercial interest of the requester" (if not, the requester satisfies the second prong of the statutory fee waiver test); and
4. If so, the agency must balance the requester's commercial interest against the identified public interest in disclosure for the purpose of ascertaining which is the "primary interest"; a fee waiver or reduction may be granted only where the public interest in disclosure is greater in magnitude than the requester's commercial interest.

See also 34 C.F.R. § 5.64(b)(3).

Page 3 of 4 Citizens for Responsibility and Ethics in Washington
No. 07-00661-F

For your information, the Department does not customarily grant blanket waivers, but rather considers each waiver request on a case-by-case basis.

The Department has reviewed your request and denies the request because it fails to satisfy the first factor of the public interest analysis. As stated above, the first factor of the public interest analysis requires the subject matter of the requested records must specifically concern an identifiable operation or activity of the government. In order to satisfy this element, the requester must identify a nexus between the requested records and the benefit to the public. See Nat'l Treasury Employees Union v. Griffin, 811 F.2d 644 (D.C. Cir. 1987). Moreover, the requester must satisfy this burden with a level of specificity, beyond generalized statements that the request somehow relates to a government operation or activity. Judicial Watch v. U.S. Dep't of Justice, 122 F.Supp.2d 5, 9 (D. D.C. 2000); see Larson v. C.I.A., 843 F.2d 1481, 1483 (D.C. Cir. 1988).

In your request, you state, "these records are likely to contribute to the public's understanding of an educational product that is apparently being utilized by a quarter million public schools students in 19 states, the District of Columbia and Puerto Rico." As stated above, the Department has concluded that your request does not reasonably describe the records sought. Assuming for the sake of argument that your request did reasonably describe the records sought, you have not stated how the requested records relate to a specific government activity or operation. At most, you indicate that there are "at least thirteen school districts were reportedly paying for [the educational] Ignite! products with money received by the states under the No Child Left Behind Act of 2001." There are several Department programs that receive funds under the No Child Left Behind Act of 2001. Your request fails to identify a specific program under which a state might pay for educational products through funds made available pursuant to the No Child Left Behind Act of 2001. Without such information, your request is nothing more than a fishing expedition through government files.

In sum, the Department's denies your request for a fee waiver in the present case. Since you have failed to meet your burden regarding a fundamental threshold requirement of the legal standard for analyzing fee waiver requests under the FOIA, the Department cannot address the remaining factors of the fee waiver analysis. However, the Department may reconsider this decision should you choose to submit supplemental or clarifying information.

Fees are charged for searching/reviewing and duplication for responsive records. The fee is calculated in accordance with 5 U.S.C. § 552(a)(4)(A)(ii)(III), 5 U.S.C. § 552(a)(4)(A)(iv)(II) and 34 CFR § 5.61. The search and the review fee are calculated based on the hourly rate of pay, plus 16% administrative charge and the duplication costs are ten cents per photocopied page. Our regulations, 34 CFR § 5.61 require us to allow you to modify your request if the cost is more than $25.00. In addition, in accordance with 34 CFR § 5.62(a)(2), if the cost is to be greater than $250.00, the requester must pay in advance.

You have the right to appeal this decision by writing, within 30 days of your receipt of this letter. Your appeal should be received by the FOIA office on or before July 25, 2007. Your appeal should be accompanied by a copy of your initial letter of request and this denial letter, and should contain any evidence or argument you wish the Department to consider in making an administrative determination on your appeal.

Page 4 of 4 Citizens for Responsibility and Ethics in Washington
No. 07-00661-F

**<u>Appeal Address:</u>**

U.S. Department of Education
Chief Information Officer
400 Maryland Avenue, SW, FOB-6-2W311
ATTN: FOIA Appeals
Washington, DC 20202-4500

Once we receive your clarification and the issues regarding charges are resolved, we will begin processing your request. Please send your clarification letter to the U.S. Department of Education, ATTN: FOIA Office, 400 Maryland Avenue, SW, PCP 9th Floor, Washington, DC 20202-4700, or send it by e-mail: EDFOIAManager@ed.gov.

If you have any questions regarding this letter, please contact Angela Arrington or myself at 202-245-6615.

Sincerely,

Maria-Teresa Cueva
FOIA Public Liaison, OM/RIMS

**EXHIBIT C**

# San Jacinto Junior High

## Campus Improvement Plan

### 2006-2007



21

| | | 8th grade SS classes | 8th grade SS classes | | | CPS system | Title I $3000 Local | Observations, Lesson plans | SS TAKS scores Core results |
|---|---|---|---|---|---|---|---|---|---|
| M, CNA, RS, PD | Classroom performance system utilized in SS classes | 8th grade SS classes | 8th grade SS classes | August 2006 | May 2007 | CPS system | Title I $3000 Local | Observations, Lesson plans | SS TAKS scores Core results |
| M, RS, PD, CNA | COW, Curriculum on Wheels | All SST Students | SST teachers | August, 2006 | Ongoing | Teachers , COW Curriculum | Title I $9000 | Walk-throughs, Periodic Assessments | Test scores Students' grades |
| M, CNA | Electives<br>Discuss History pertaining to | All students | Elective teachers | August 2006 | May 2007 | Curriculum textbooks | None | Lesson plans | TAKS results, AEIS |
| RS, M, CNA | Teams<br>Interdisciplinary activities/lessons | All students | English & SS Teachers | August 2006 | May 2007 | Teachers, interdisc. literature | Team Accounts | Formative tests, collaborative activities, lesson | TAKS results |
| CNA | Goal Sheet for each student | All students | Core Teams | Sept. 2006 | May 2007 | SS, Benchmark Comp Services | Local $125 | Benchmark, core exam | TAKS |
| M, CNA, A | Principal<br>Campus Student Success Team will meet throughout the year to discuss implementation & effectiveness of campus initiatives. | All | Principal | August 2006 | Fall 2006 | TAKS data, CIP, benchmark data, Comp Serv, Acct System | Local $125 | Meeting minutes | 04-05 TAKS/SDAA II Results, A & State Accountability Ratings |
| M, CNA, A | Individual conf. with SST teachers | 8th | Principal | Sept. 2006 | May 2007 | TAKS/TAKS-I Data, Failure Report, Needs Assess. Benchmarks | None | Meeting notes, Lesson plans, walkthrough observ | Assessment results, grades, Passing rates, AEIS |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| M, RS, CNA, PD | COW, Curriculum On Wheels | | | Sept. 2006 | May 2007 | Teacher, COW device through visual learning | Title I $9000 | Class Visits Lesson Plans | TAKS results, Core test grades Students' grades |
| RS,M,CNA | Social Studies Science objectives will be addressed as SS classes study climate, weather & the scientific method | All students | All SS teachers | August 16, 2006 | Implementation of TEKS | Textbooks, ancillary materials | Local | Benchmark results & core exams | TAKS results |
| RS,M. CNA | Teams Interdisciplinary unit between Math & Science | All students | Phillips, McChristian | Nov. 2006 | Nov. 2006 | M&M's | Stars Team Account | Final product (poster), lesson plans, CLC | TAKS results |
| M,CAN A | Principal Student Success Team will meet to discuss implem. & effectiveness of TAKS initiatives | All students | Principal | August 16, 2006 | Fall 2006 | TAKS data, CIP, Benchmark data | None | Meeting minutes | 2005-2006 TAKS results, AYP & State Accountab Ratings |
| M,CNA,A | Individual conf. with Science teachers | 8th | Principal | Sept. 2006 | May 2007 | TAKS/TAKS I data Failure Report, Needs Asses. Benchmarks | None | Meeting notes, Lesson plans, Walkthrough observ. | Assessment results, Students' grades, Passing rates, AEIS |

| | | | | | | internet | Local | | |
|---|---|---|---|---|---|---|---|---|---|
| CNA | with the TEKS & TAKS acceleration | | | | | | | | |
| CNA, M, PD | Use Of Gizmos Lessons in power point | All | Math dept. | August 2006 | Ongoing | Teacher, software | | Walk-throughs, Teacher observations, Grade reports | TAKS results, grade reports |
| CNA, M | Document cameras | All | Math dept. | Sept. 2006 | Ongoing | Teachers, Cameras | Sp. Ed. | Implementation into lessons | Grades, TAKS |
| CNA, M | Science C.O.W. – Curriculum On Wheels | All students | Science teachers | Sept.2006 | Ongoing | Teacher, COW device | Title I $9000 | Improve state test scores | TAKS results, Core test grades |
| CNA | Ceiling mounts and data for LCD | All students | Science teachers | Oct. 2006 | Ongoing | Computer, LCD | Title I $1200 | Implementation into classroom for better visibility | Grade report, TAKS results |
| CNA | Lap top computer or small computer with printer for each lab room | All students | Science teachers | Jan. 2007 | Ongoing | Computer, data ports | Title I $6000 | Implementation in science lab work | TAKS scores, Core results |
| RS,M, CNA | Social Studies Students will utilize computer lab to master TEKS objectives | 8th grade SS students | 8th SS teachers, Tech. teacher | Ongoing | Ongoing | Computers, Computer teachers | Title I Local | Lessons plans Lab Schedules | Lab logs, TAKS results |
| RS,M, CNA | Use COW, VCR, DVD, LCD projectors, CPS and movie maker software to create clips, and provide visuals | All students | All staff | Ongoing | Ongoing | TV/VCR, Video clips LCD proj. DVD, Power Point | Local Title I $3000 | Lesson plans, benchmarks, core results | TAKS, AEIS |
| RS,M, CNA | Electives Implement instructional strategies that incorporate technology | All students | All teachers | Ongoing | Ongoing | TEKS Labs | None | Lesson plans, Lab schedules | Core results, 6wks test results, TAKS results |
| RS,M, CNA | Teams Utilize tech. with comp.. generate spreadsheets and power points | All students | All teachers | Ongoing | Ongoing | Campus tech Computer Lab, LCD projectors | Local | Benchmark, IPR & grades | Core & TAKS |

**EXHIBIT 5**



# UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF MANAGEMENT

August 23, 2007

Daniel C. Roth, Esq.
Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, NW, Suite 450
Washington, DC 20005

RE: FOIA Request No. 07-00661-F

Dear Mr. Roth:

This letter is in response to your letter dated July 3, 2007, regarding your May 16, 2007 request for information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. By letter dated June 20, 2007, we advised you of our determination that your request could not be processed because it does not describe the records sought in sufficient detail to enable Department staff with knowledge of the subject matter of the request to identify and locate responsive documents with a reasonable amount of effort.[1]  Your July 3, 2007 letter challenges this determination.

Your July 3, 2007 letter you sought "clarification from Education as to whether its electronic files are keyword or recipient searchable, or capable of being searched using some other method[,]" and asked "If Education's electronic files are not searchable, please confirm whether or not Education maintains paper copies of those same records that can be searched in response to CREW's FOIA request." You also asked us to "clarify and explain the reasons the Department cannot process CREW's request of May 16, 2007."

I note initially that the FOIA does not impose an obligation upon agencies to provide requesters with detailed descriptions of their electronic databases and/or electronic search capabilities. Consequently, the Department will not respond to your request for such information. However, in response to your request for additional information concerning the reasons the Department cannot process your May 16, 2007 request, the following summary of deficiencies noted in your request is provided:

- Your request seeks access to "any records" from several Department offices, but fails to identify further the types or categories of "records" for which the Department should conduct its search.

- The No Child Left Behind Act of 2001 was enacted on January 8, 2002. The start time of your request precedes the enactment of the statute.

---

[1] The June 20, 2007 letter also denied your request for a fee waiver. However, the Department will address your appeal of that determination in a separate letter.

400 MARYLAND AVE. S.W., WASHINGTON, DC 20202-4500
www.ed.gov

Our mission is to ensure equal access to education and to promote educational excellence throughout the nation.

Page 2 - Citizens for Responsibility & Ethics in Washington
No. 07-00661-F

- Your July 3, 2007 letter states that you seek "records that reflect contacts with," while your May 16, 2007 request sought access to "any records … of or relating to any contact." The two statements implicate different classes or categories of records. Given this inconsistency, the Department cannot reasonably determine the focus of your request.

- If the Department simply relied on your original request of May 16, 2007 seeking access to "any records … of or relating to any contact," the Department cannot reasonably conclude what types of record would be responsive to the request (meeting notices? meeting minutes? Meeting agenda? Taxi cab receipt?).

- You request seeks "any records" from at least three Department offices, each of which has a staff of more than 30 people; thus, the request would require the Department to search the records of every member of the staffs of those offices whether that person is likely to have responsive records or not.

The Department is unable to process your request further unless and until we receive clarification from you regarding the issues identified above. Should you wish us to process your request further, please send the requested clarifying information to the U.S. Department of Education ATTN: FOIA Office, 400 Maryland Avenue, SW, PCP 9th Floor, Washington, DC 20202-4700, or by e-mail to: EDFOIAManager@ed.gov.

Sincerely,

Maria-Teresa Cueva
FOIA Public Liaison, OM/RIMS

# EXHIBIT 6

**CREW** | citizens for responsibility and ethics in washington

September 14, 2007

Maria-Teresa Cueva
FOIA Public Liaison, OM/RIMS
U.S. Department of Education
ATTN: FOIA Office
400 Maryland Avenue, S.W.
PCP 9th Floor
Washington, D.C. 20202

By electronic and first class mail

Re: FOIA Request No. 07-00661-F

Dear Ms. Cueva:

This is in response to your letter, dated August 23, 2007, and received by CREW on August 27, 2007, in which you determined for the second time that CREW's May 16, 2007 FOIA request for documents related to Ignite! Learning can not be processed because, in your view and that of the Department of Education ("Education"), it fails to reasonably describe the records sought.  See Exhibit A.  CREW maintains its position, stated in my July 3, 2007 letter to you, that the Department's determination is in error.  See Letter from Daniel C. Roth, Counsel, CREW, to Maria-Teresa Cueva, U.S. Department of Education (July 3, 2007) (attached as Exhibit B).  While I will not reiterate the substance of that letter here, but attach it for reference, I do respond to each point you make in your August 23 letter.

First, you claim that CREW's request "seeks access to 'any records' from several Department offices, but fails to identify further the types of categories of "records" for which the Department should conduct its search."  Exhibit A at 1.  In addition, you wrote the following in your fourth bullet point:

If the Department simply relied on your original request of May 16, 2007 seeking access to "any records ... of or relating to any contact," the Department cannot reasonably conclude what types of record (sic) would be responsive to the request (meeting notices? meeting minutes?  Meeting agenda? Taxi cab receipt?).  Exhibit B at 2.

To the contrary, CREW's request describes at length the types of records we seek:

Please search responsive records regardless of format, medium or physical characteristics.  Where possible, please produce records electronically in PDF or TIF format on a CD-ROM.  We seek records of any kind, including electronic



records, audiotapes, videotapes and photographs. Our request includes any telephone messages, voice mail messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions and transcripts or notes of any such meetings and/or discussions. Exhibit B at 2.

It appears from your first and fourth points that you failed to read past page one of CREW's FOIA request. As quoted, CREW's request described the types of records that would be responsive to our request.

Second, you took issue with the fact that the time span of CREW's request – January 20, 2001, to the present – begins before the January 8, 2002 enactment of the No Child Left Behind Act of 2001 ("NCLB"). Exhibit A at 1. Ignite! Learning was founded in 1999. See Walter F. Roche, Jr., Bush's Family Profits from 'No Child' Act, L.A. Times, Oct. 10, 2006 (Exhibit B to Exhibit B). The Department of Education has existed since 1980. The date of the enactment of NCLB is not at all relevant to whether or not Education possesses the records CREW seeks from a time period preceding January 8, 2002.

Third, you raise the issue that the language from my July 3 letter is not identical to that of the May 16 request. Exhibit A at 2. While you are correct to note that the FOIA request seeks access to "any records ... of or relating to any contact," while the July 3 letter mentions "records that reflect contacts with" Ignite! and associated individuals, this is of no consequence, and somewhat disingenous. The passage from the July 3 letter is a paraphrase describing the May 16 request. See Exhibit B at 1. The July 3 letter clearly asserted CREW's position that there was no deficiency in the May 16 request, and did not suggest CREW planned to narrow that request without further information from Education. Lest there be any further confusion on this point, the terms of the May 16, 2007 FOIA request remain unaltered from their original form.

Finally, you represent that approximately 90 staff persons' files would need to be searched for responsive records. Exhibit B at 2. You appear to be arguing that responding to CREW's request would be overly burdensome. The courts have made abundantly clear that this is not a rationale for rejecting a FOIA request except in extreme circumstances, such as requiring a search through 23 years of unindexed files, Nation Magazine v. U.S. Customs Serv., 71 F.3d 885 (D.C. Cir. 1995), or spending a projected eight years segregating nonexempt documents from millions of pages of government files, Solar Sources, Inc. v. United States, 142 F.3d 1033 (7th Cir. 1998)). This is clearly not such case.

In sum, your letter appears to be just another step in Education's avoidance of its responsibilities under FOIA under the guise of specious factual and legal arguments. This

pattern of conduct strongly suggests that Education is not acting in good faith.  Again, it is noteworthy that the Department of Commerce began processing a nearly identical request within a week of receipt on May 16, 2007, and did not raise the concerns and issues Education has raised.  Commerce completed its search of three department offices, including its Office of the Secretary on August 31, 2007.

Under these circumstances, with four full months having passed without Education processing CREW's request, I ask that you respond to this letter immediately.  If I do not hear from you by September 21, 2007, CREW will be forced to take legal action to enforce our rights under the FOIA.

Thank you for your attention to this matter.

Sincerely,

Daniel C. Roth
Counsel

Enclosures

**EXHIBIT 7**



UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF MANAGEMENT

SEP 2 1 2007

ASSISTANT SECRETARY

Daniel C. Roth, Esq.
Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, DC 20005
(and via email to: droth@citizensforethics.org )

Re: FOIA Appeal—Request No. 07-00661-F (Fee Waiver)

Dear Mr. Roth:

I am writing in response to your July 9, 2007 letter appealing the U.S Department of Education's (Department's) June 20, 2007 denial of CREW's request for a waiver of fees in connection with its May 16, 2007 request for Department records pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, administratively denominated Request No. 07-00661-F.

Background

Your Request No. 07-00661-F sought access to:

> [A]ny records dating from January 20, 2001, through the present, from [sic] the following Department of Education offices:

> (1) Office of the Secretary, including the offices of the Chief of Staff and Senior Counselor,
> (2) Office of the Deputy Secretary,
> (3) Office of Elementary and Secondary Education[, and]
> (4) [A]ny other office in which there are staff members whose duties include implementation of the No Child Left Behind Act of 2001,

> of or relating to any contact with the following individuals or entities:

> (1) Ignite! Learning a/k/a Ignite!, or any officer or employee thereof,
> (2) Curriculum on Wheels a/k/a COWs,
> (3) Neil Bush,
> (4) Barbara Bush,
> (5) Ken Leonard,
> (6) Lori Anderson,
> (7) Ashleigh Snyder and
> (8) Sid Rogich.

Page 2—Mr. Roth

Your request also asked for a waiver of associated processing fees. Your fee waiver request asserted: (1) that "the subject of this request concerns the operations of the federal government"; (2) that "the disclosures will likely contribute to a better understanding of relevant government programs and procedures by CREW and the general public in a significant way"; and (3) that "these records are likely to contribute to the public's understanding of an educational product that apparently is being or has been utilized by a quarter million public school students in 19 states, the District of Columbia and Puerto Rico" (which contribution CREW would accomplish by analyzing the responsive records and sharing such analysis with the public via memoranda, reports, or press releases, and/or by disseminating the responsive records on an interactive website for public analysis and comment); and (4) that the request was made primarily and fundamentally for non-commercial purposes.

The Department denied your fee waiver request by letter dated June 20, 2007,[1] on the ground that you had not met your burden to demonstrate that the subject matter of the requested records concerned an identifiable operation or activity of government. Specifically, the Department's fee waiver denial letter stated, in pertinent part:

> In your request, you state, "these records are likely to contribute to the public's understanding of an educational product that apparently is being or has been utilized by a quarter million public school students in 19 states, the District of Columbia and Puerto Rico." As stated above, the Department has concluded that your request does not reasonably describe the records sought. Assuming for the sake of argument that your request did reasonably describe the records sought, you have not stated how the requested records relate to a specific government activity or operation. At most you indicate that there are "at least thirteen school districts were reportedly paying for [the educational] Ignite! Products with money received by the states under the No Child Left behind Act of 2001. There are several Department programs that receive funds under the No Child Left Behind Act of 2001. Your request fails to identify a specific program under which a state might pay for educational products through funds made available pursuant to the No Child Left Behind Act of 2001. Without such information, your request is nothing more than a fishing expedition through government files.

The Department found that, because your request had not shown a connection between the subject of your FOIA request and a specific Department program, you had not met your burden to demonstrate that disclosure of the requested records would shed light on an operation or activity of government. Your appeal ensued.

<u>Decision on Appeal</u>

Based upon a careful review of the correspondence between the parties, the nature of your request and the information it sought, the arguments asserted in your appeal, and applicable legal precedent, I find that the Department properly denied your request for a fee waiver. The reasons for my decision are set forth below.

---

[1] The June 20, 2007 letter also advised you that the Department was unable to process your request because the request did not reasonably describe the records sought such that an agency employee familiar with the subject of your request would be able to locate potentially responsive documents.

Page 3—Mr. Roth

Legal Standard for Fee Waivers Under FOIA

The FOIA authorizes agencies to recover from requesters certain costs associated with processing requests for access to government records. 5 U.S.C. § 552(a)(4)(A)(i) and (ii) (2000). The statute further provides for the waiver of such fees in whole or in part where disclosure of the information [requested] is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii) (2000); see also 34 C.F.R. § 5.64(a). The requester bears the burden of justifying entitlement to a fee waiver. See Casad v. Department of Health and Human Services, 2003 U.S. Dist. LEXIS 13007 (D.D.C. June 20, 2003). As stated in the Department's June 20, 2007 letter, and discussed below, fee waiver determinations turn on the consideration of six factors. To demonstrate entitlement to a waiver of fees, a requester must not only request a waiver, but also address these factors in sufficient detail to enable an agency to determine whether it can reduce or waive the fees. See Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309 (D.C. Cir. 2003). The Department may not waive or reduce fees unless it makes the requisite findings regarding both the public interest and primary interest. 34 C.F.R § 5.64(a).

Public Interest Prong

Once a requester has asserted a right to a waiver of fees, he or she must meet the first prong of the statutory test by supporting the request with evidence that establishes that disclosure of the information sought is in the public interest. 5 U.S.C. § 552(a)(4)(A)(ii) (2000). In order to determine whether the disclosure of the information responsive to a request furthers the narrow public interest cognizable under FOIA – i.e., significant contribution to increased public understanding of the operations of the government – the Department must consider the following four factors in sequence:

1. The subject matter of the requested records themselves must specifically concern identifiable "operations or activities of the government" (in some instances, certain documents contained in records responsive to a request will meet this requirement while others will not);
2. In order for the disclosure to be "likely to contribute" to an understanding of specific government operations or activities, the disclosable portions of the requested records must be meaningfully informative in relation to the subject matter of the request;
3. The disclosure must contribute to the "understanding of the public at large" as opposed to that of the individual requester or a narrow segment of interested persons; and
4. The disclosure must "contribute significantly" to public understanding of government operations or activities.

See Judicial Watch, Inc. v. Department of Justice, No. 03-5093, 2004 WL 980826 (D.C. Cir. May 7, 2004); see also 34 C.F.R § 5.64(b)(1) and (2). Only if a requester establishes all four elements of the public interest test outlined above, will the Department find that the first prong of the statutory requirement for a fee waiver has been satisfied.

Page 4—Mr. Roth

<u>Primary Interest Prong</u>

Where an agency determines that the public interest requirement for a fee waiver has been met, it may waive or reduce applicable fees only where it also finds that "disclosure of the information is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii) (2000). In order to determine whether this second requirement has been satisfied, the Department must consider the following two factors in sequence:

1. Does the request involve any "commercial interest of the requester" (if not, the requester satisfies the second prong of the statutory fee waiver test); and
2. If so, the agency must balance the requester's commercial interest against the identified public interest in disclosure for the purpose of ascertaining which is the "primary interest"; a fee wavier or reduction may be granted only where the public interest in disclosure is greater in magnitude than the requester's commercial interest.

<u>See also</u> 34 C.F.R Section 5.64(b)(3).

<u>Discussion</u>

The Department denied your fee waiver request based on a determination that you had failed to meet your burden under Factor 1 of the public interest prong, to show that the subject matter of the requested records themselves specifically concerns an identifiable operation or activity of the government; in this regard, the initial decision noted that a requester must identify a nexus between the requested records and the benefit to the public. <u>See</u> <u>Nat'l Treasury Employees Union v. Griffin</u>, 811 F.2d 664 (D.C. Cir. 1987). Moreover, this burden will not be satisfied with generalized statements that the request somehow relates to a government operation or activity; the requester must satisfy the burden with a level of specificity. <u>Judicial Watch v. U.S. Dep't of Justice</u>, 122 F.Supp.2d 5 (D. D.C. 2000); <u>Larson v. C.I.A.</u>, 843 F.2d 1481 (D.C. Cir. 1988).[2]

Your appeal argues: (1) that the Department's denial was based on an erroneous standard; and (2) that the documents responsive to your request "unambiguously involve the operations and activities of the federal government with respect to Ignite! Learning, an educational product company founded and headed by Neil Bush, President George W. Bush's brother" and "over a quarter million public school students are reportedly using the product around the country." To support your assertion that the requested records would shed light on an operation or activity of government, you also state that school districts have bought Curriculum on Wheels a/k/a COWs with NCLB funds, and that "[w]hen the president's brother's business is getting hundreds of thousands of dollars in federal money amid reports that presidential fund-raisers are putting pressure on school districts to use their NCLB funds in this manner, the public interest is surely served by learning more about contacts between the company and the federal agency charged with distributing billions of taxpayer dollars." For the following reasons, I do not find that any of these arguments states a basis for granting your appeal.

---

[2]  As CREW failed to meet its burden with respect to the public interest prong of the fee waiver test, it is unnecessary to analyze whether it has satisfied the requirements of the primary interest prong.

Page 5—Mr. Roth

With respect to your first argument, you are incorrect. You state that because the Department pointed out that you did not tie your request for a particular program, that it created a "newly minted requirement that CREW identify a 'specific program.'" Your characterization of the Department's letter is inaccurate. Other than alleging that there are states purchasing educational products like Ignite! and COWs with funds received through the No Child Left Behind Act of 2001, you have failed to make a connection between the purchase of these educational products at the local level and an operation or activity of the federal government. To meet this requirement of the public interest prong of the fee waiver analysis, records must be sought for their informative value regarding a specifically identified operation or activity of government. Judicial Watch, Inc. supra, 122 F. Supp. 2d at 9. In other words, you have not identified how the purchase of these products at the local level sheds light on the operations or activities of the federal government. Your argument is conclusory and utterly lacking in specificity sufficient to meet the requester's burden. Moreover, you have conceded that the unidentified records will shed light on unspecified activities not of this Department but, rather, of the "federal government." In sum, your arguments lack the specificity needed to satisfy your burden under the public interest prong of the fee waiver analysis.

I also find your second argument – that the documents responsive shed light on an operation or activity of government because the Ignite! Learning is developed by a company founded by the president's brother, Neil Bush – unpersuasive. The source of an educational product does no more to shed light on the operations or activities of this Department than the fact that the product may have been purchased through funds made available under the No Child Left Behind Act of 2001.

For all of these reasons, I must deny your appeal.

Right to Judicial Review

This letter constitutes exhaustion of the administrative remedies available to you under FOIA. You have the right to judicial review of this decision, pursuant to 5 U.S.C. § 552(a)(4), in the United States District Court for the district in which you reside, in which you have your principal place of business, in which the records are maintained, or for the District of Columbia.

Sincerely,

Michell Clark